PASQUALONE, APPELLANT, *v.*
PASQUALONE ET AL., APPELLEES.

[Cite as Pasqualone v. Pasqualone (1980), 63 Ohio St. 2d 96.]

(No. 79-1491—Decided July 9, 1980.)

Mr. *Jonathan S. Rocker* and *Mr. Jack W. Abel,* for appellant, Bridget Pasqualone.

*Cort & Bruening* and *Ms. Francine M. Bruening,* for Jennifer Pasqualone.

*Reminger & Reminger Co., L.P.A.,* and *Mr. William V. Valis,* for appellees, David Pasqualone *et al.*

*Mr. Charles W. Geron,* for Ohio Board on Uniform State Laws *et al.*

CELEBREZZE, C. J. The issue before this court is whether appellant, Bridget Pasqualone, is entitled to a writ of habeas corpus giving her custody of Jennifer.

There is much discussion of the effect of the Uniform Child Custody Jurisdiction Act (UCCJA), R. C. 3109.21 through 3109.37. It is under these provisions that appellee, David Pasqualone, brought an action seeking permanent custody of Jennifer. Appellee, however, never informed the trial court, in bringing his action for custody, that another action was pending in Illinois.

R. C. 3109.27 states in part:

"(A) Every party in a custody proceeding, in his first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the

places where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period. In this pleading or affidavit every party shall also include all of the following information:

"* * *

"(2) Whether the party has information of any custody proceeding concerning the child pending in a court of this or any other state;

"* * *

"(C) Each party has a continuing duty to inform the court of any custody proceeding concerning the child in this or any other state of which he obtained information during this proceeding."

The language of this provision is specific and mandatory in nature. Information of other actions is essential to the proper operation of the Act, for under the Act the first state to obtain jurisdiction over a custody dispute under jurisdictional prerequisites substantially in accordance with the UCCJA decides the case for all jurisdictions which have adopted the Act unless that court decides another jurisdiction is a better forum.

Without information of other proceedings, a court cannot intelligently decide if it has jurisdiction or if it should allow another jurisdiction to decide the case. As this court stated, in *Collins* v. *Millen* (1897), 57 Ohio St. 289, 291, "[t]he party who seeks to exercise* * *[a] right, must comply with whatever terms the state imposes upon him as conditions to its enjoyment." See, also, *American Restaurant & Lunch Co.* v. *Glander* (1946), 147 Ohio St. 147, and *Bd. of Edn. of Mentor* v. *Bd. of Revision* (1980), 61 Ohio St. 2d 332. The requirement in R. C. 3109.27 that a parent bringing an action for custody inform the court at the outset of any knowledge he has of custody proceedings pending in other jurisdictions is a mandatory jurisdictional prerequisite of such an action.

By his own admission, David Pasqualone was aware of the Illinois proceeding at the time he instituted his action for custody under R. C. Chapter 3109. As a consequence, no proceeding has as yet been brought in Ohio to give appellee permanent custody of Jennifer.

The trial court, however, was not required to give appellant a writ of habeas corpus merely because appellee did not effectively bring an action under R. C. Chapter 3109. Appellant is only entitled to a writ if the courts of this state are required to give full faith and credit to the Illinois decree, if appellee's seizure of Jennifer was unlawful, or if it is in the child's best interests to be temporarily placed with Bridget.

In the absence of an agreement or binding court order, parents have equal rights to custody of their children. *In re Corey* (1945), 145 Ohio St. 413. The custody provisions of the separation agreement were no longer effective when David took Jennifer in July 1978, because Bridget had moved away from the Indiana-Ohio area. There was clearly no acquiescence to the move or to Bridget's continued custody of Jennifer, for David had voiced objections at the time of the move.

There was also at the time no binding court order placing custody with Bridget. Although the Circuit Court of Cook County had issued a temporary custody decree, David had not received notice of the dissolution proceeding. Even if the Illinois court had the ability to obtain jurisdiction over David, the court was obligated to serve him with the best possible notice before a disposition could be made against him. *Mullane* v. *Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306. In addition, as discussed, *infra,* the Illinois court did not have jurisdiction to render a custody decision against David.

In *In re Richard M.* (1975), 14 Cal. 3d 783, 537 P. 2d 363, the court, after determining that a father had successfully legitimated a child he had refused to return to the mother after a visit, stated, at page 801, that in that habeas corpus proceeding the court "must apply statutes governing the custody of legitimate offspring, giving both parents equal rights thereto, and resolve the dispute between mother and father according to the child's best interests."

Acquiescence in a custody arrangement may be a sufficient basis for finding that a temporary right to custody exists in one parent. In such cases, the failure to return the child after a visit may well be a sufficient cause for issuing a writ of habeas corpus. However, in the case at bar, David both placed a specific condition in the custody agreement which Bridget failed to fulfill, and objected to her action. In such a case, we

choose to follow the California court and not grant the writ on the basis of any arrangement made between Bridget and David regarding Jennifer.

Normally, as in the California case, this case would be decided according to the child's best interests; however, appellant contends that we are bound, either by the Full Faith and Credit Clause or our own statutory scheme, to the best-interests determination made by the Circuit Court of Cook County in issuing a permanent custody decree in favor of Bridget on October 16, 1978.

The United States Supreme Court in *May* v. *Anderson* (1953), 345 U.S. 528, faced a Full Faith and Credit question similar to the one involved in the case at bar. In that case, an Ohio court granted a writ of habeas corpus in a custody matter solely on the basis of a Wisconsin custody decree which the Ohio Court held bound it under the Full Faith and Credit Clause. Although the summons and complaint had been served on the Ohio party personally, the United States Supreme Court, without giving reasons therefor, stated that the Wisconsin court had failed to obtain jurisdiction over the person of the Ohio party.

The Supreme Court, noting that a judgment *in personam* is not entitled to extra-territorial effect if the court rendered the decision without obtaining jurisdiction over the person sought to be bound, held, at page 534, that a custody decision, because it alters one's rights in one's child, "is a personal right entitled to at least as much protection as ***[the] right to alimony." This was in contrast to *ex parte* divorce proceedings which the court had held could be utilized to dissolve the bonds of matrimony but not to determine the right to alimony in *Estin* v. *Estin* (1948), 334 U.S. 541, and *Kreiger* v. *Kreiger* (1948), 334 U.S. 555. The fact that the child's technical domicile might have been in Wisconsin was not relevant according to the court.

Appellant argues that *May, supra,* merely requires that all parties be given notice and an opportunity to be heard and that if such an opportunity is given, then a court may determine the custody of the child for all parties involved. However, in *May,* the court clearly stated that decisions impinging on one's right to custody were *in personam* in nature, requiring that jurisdic-

tion over the person be obtained. Appellant contends, however, that this perception has changed since *May* was rendered.

In *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, the court, at page 316, held that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

In *Shaffer* v. *Heitner* (1977), 433 U.S. 186, after discussing the requirements the Due Process Clause imposes on jurisdiction, the court stated, at page 212:

"We therefore conclude that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny."

It is argued that *Shaffer* v. *Heitner* leaves a narrow set of cases involving status which require no further contacts with a state than the presence of the party whose status is to be determined. This category, which was first mentioned in *Pennoyer* v. *Neff* (1878), 95 U.S. 714, was discussed in *Shaffer,* where the court stated, in footnote 30, at page 208:

"We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness."

In *Shaffer,* though, the court did not exempt status determinations from the standards of fairness, but rather it stated that the presence of a party whose personal status is to be determined could constitute sufficient contact with a state for that state to fairly and justly make the determination. In similar fashion, the court held that the presence of property in a jurisdiction might constitute sufficient minimal contacts with a jurisdiction to adjudicate the issue of title to the property. In so doing, *Shaffer,* under an *International Shoe* analysis, left undisturbed the traditional outcome in *in rem* cases.

In actuality *Shaffer* abandons traditional notions of status and of *in rem* jurisdiction in favor of considerations of fairness and substantial justice. The question becomes whether a person has sufficient contacts with a jurisdiction for that jurisdic-

tion to fairly and justly make a determination against him on a particular matter. See, also, *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 62 L. Ed. 2d 490.

The court in *May, supra,* by holding that custody decisions are *in personam* and by treating as irrelevant the technical domicile of the child, indicated that more contact than just the presence of a child's domicile in a state is required. The court has also indicated a need for more contact in *Kulko* v. *Superior Court of California* (1978), 436 U.S. 84.

In *Kulko,* the court, at page 92, stated that "an essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." The court determined that two visits to California while in the military did not constitute sufficient conduct to make it reasonable and fair to require a husband to defend in an action for child support in California.

In *May,* custody was analogized with the award of alimony in order to distinguish a custody award from an order of divorce. This analogy, which would of course apply to child support payments as well as alimony, is valid today under the analysis of *International Shoe* and *Shaffer.*

In a divorce action, the desire of one party to break the marital bonds constitutes a sufficient basis for the divorce regardless of the other spouse's desires. It is fair and reasonable to allow a divorce on the basis of one spouse's unilateral acts and as a consequence the presence of one spouse in a state gives that state's courts jurisdiction over the other spouse for the purposes of ordering a divorce.

In a custody case, on the other hand, as in a child support or alimony case, it is not fair and reasonable to allow one party to bind the other party on the basis of his unilateral acts. A court must balance the conflicting interests. Although the contacts required to allow a court to make a binding custody order may not need to be as great as those required to order a payment, more contact is required than would be required in a divorce action. In this sense, *May,* in requiring jurisdiction over the person, survives today as good law.

The presence of the child and one spouse in Illinois is not enough, in and of itself, to give an Illinois court jurisdiction over the other spouse in a custody action.

In the case at bar, David Pasqualone's other contacts with Illinois were not sufficient to allow that state to exercise jurisdiction over his person for the purposes of depriving him of custody of his child. He has only been in Illinois twice, each time for less than a day. He placed a clause in the separation agreement requiring Bridget to stay in Ohio or Indiana in order to keep custody of Jennifer under the agreement, and he specifically objected when Bridget moved to Illinois with Jennifer.

While it is possible that acquiescence or agreement that Bridget and Jennifer could live in Illinois might constitute conduct of such a quality and nature that it would be reasonable and fair to require David to conduct his defense in Illinois, David's minimal physical contact with Illinois coupled with his specific objections to the move to Illinois make it unjust and unreasonable to require David to conduct his defense there.

Appellant claims that David's tortious conduct in not returning Jennifer to Bridget provides Illinois with jurisdiction over his person. However, as explained above, David's conduct did not violate any agreement or binding court order and as a consequence, it is not a sufficient basis for allowing Illinois to assert jurisdiction over his person.

Appellant also claims that the courts of Ohio can and should go beyond the Full Faith and Credit Clause. She argues that the provisions of the UCCJA require acquiescence and enforcement of the Illinois decree. Even if this were true between Ohio and other jurisdictions, it certainly is not true between Ohio and Illinois.

R. C. 3109.24(A) states:

"(A) A court of this state shall not exercise its jurisdiction, if at the time of filing the petition a custody proceeding concerning the child was pending in a court of another state exercising jurisdiction substantially in conformity with sections 3109.21 to 3109.36 of the Revised Code, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons."

R. C. 3109.31(A) states:

"(A) If a court of another state has made a custody decree, a court of this state shall not modify that decree, unless it appears to the court of this state that the court that

rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code, or has declined to assume jurisdiction to modify the decree, and the court of this state has jurisdiction."

Illinois Revised Statutes (1977), Chapter 40, Section 601, has only adopted the basic subject-matter jurisdiction section of the UCCJA. (The equivalent of R. C. 3109.22.) Many important sections have not been adopted including the one allowing the first court asserting jurisdiction over a case to determine that another state is a better forum in which to litigate the matter. These sections are essential to the proper operation of the statute and, because of their omission, the Illinois statute does not have jurisdictional prerequisites substantially in accordance with R. C. 3109.21 to 3109.36.

It is contended that our ruling today will emasculate the UCCJA and its effort to provide a forum which will effectively and finally dispose of all custody claims in a given case. We do not believe this to be the case. Ordinarily, sufficient contacts will exist for a court to have jurisdiction over the person of all the parties. Further, there is not usually an agreement limiting the right to custody to certain locations coupled with a party's specific objections to the child's moving from these locations.

In addition, if Illinois had fully adopted the UCCJA, it probably could have obtained jurisdiction over the person of David through the Ohio courts. R. C. 3109.34 and 3109.35 (Sections 19 and 20 of the UCCJA) allow courts to ask other courts and accept requests by other courts to hold hearings and order appearances. In *Kulko, supra,* the court suggested that similar provisions in the Revised Uniform Reciprocal Enforcement Support Act of 1968 (an Act which influenced the UCCJA) might well be a means for the California court to obtain jurisdiction. Such may well be true of Sections 19 and 20 as well.

Because the Illinois court failed to obtain jurisdiction over David Pasqualone, we are not bound by its custody decree.

Appellant argues that the best-interests determination made by the Court of Common Pleas of Lake County was in error. The determination of a child's best interests in a custody case is a factual decision. This court will not weigh evidence.

*Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285. This court will only reverse a factual determination of a trial court if it is error as a matter of law.

The best-interests determination of the trial court was not in error as a matter of law. Bridget had led a relatively unstable life since she and David separated. She had moved four times, and it was necessary to use babysitters for her to properly care for Jennifer. There was evidence that she was often out late. David, on the other hand, was living in his parents' house. His parents and sisters were available to help David care for Jennifer, and David testified that unless he happened to remarry, he intended to remain in his parents' house.

The judgment of the Court of Appeals is reversed insofar as it grants permanent custody to David. The judgment is affirmed insofar as it denies a writ of habeas corpus to Bridget.

*Judgment affirmed in part*
*and reversed in part.*

HERBERT, P. BROWN, SWEENEY, LOCHER and STRAUSBAUGH, JJ., concur.

W. BROWN, J., dissents.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting for HOLMES, J.