IN RE PALMER, A.K.A. PIHLBLAD, A MINOR.

IN RE PIHLBLAD ET AL., MINOR CHILDREN.

[Cite as In re Palmer (1984), 12 Ohio St. 3d 194.]

(Nos. 83-1409 and 83-180—Decided July 25, 1984.)

*Mr. Raymond A. Swope, Jr.,* for appellants William and Helen Kegley in case No. 83-180.

*Mr. Frank J. Motz,* for appellant Cathleen Pihlblad in case No. 83-1409.

*Mr. James R. Unger,* prosecuting attorney, and *Mr. Richard J. Burt,* for appellee Stark County Welfare Dept. in case Nos. 83-180 and 83-1409.

*Per Curiam.* For the reasons set forth below we find permanent custody was properly granted to the Stark County Welfare Department. Accordingly we affirm the natural mother case, No. 83-1409, and declare the foster parent case, No. 83-180, to be moot in light of the former holding.

I

Appellant, Cathleen Pihlblad, raises three issues on appeal. The first issue avers that appellant's residual parental rights, pursuant to R.C. 2151.01(B)(11) and 5103.16, were violated since she was not allowed to contest the custody determination by interposing her residual adoptive right.

The record clearly indicates, contrary to appellant's representations, that the custody complaint was initiated prior to appellant's attempt to petition

the probate court for the childrens' adoption. Under R.C. 2151.011(B)(12), permanent custody creates a status which "divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including *all residual rights* and obligations." (Emphasis added.) By reaching the determination that permanent custody was appropriate under the specific circumstances of the instant case, whatever residual rights the parent may have held prior to such determination were properly divested and all due process safeguards were followed. We thus find no merit in appellant's first contention.

## II

The second issue raised by appellant avers that appellee's failure to affirmatively comply with R.C. 3109.27 nullified the jurisdiction of the juvenile court. We disagree.

R.C. 3109.27(A) mandates the filing of an affidavit by *every* party in order to "give information under oath as to the child's present address; the place where the child has lived within the last five years, and the names and present addresses of the persons with whom the child has lived during that period * * *," as well as information pertaining to any custody proceedings concerning the child[ren] in this or any other state. In *Pasqualone* v. *Pasqualone* (1980), 63 Ohio St. 2d 96 [17 O.O.3d 58], we held, in the first paragraph of the syllabus, that "[t]he requirement in R.C. 3109.27 that a parent bringing an action for custody inform the court at the outset of the proceedings of any knowledge he has of custody proceedings pending in other jurisdictions is a mandatory jurisdictional requirement of such an action." The record indicates that no such required affidavit or pleading was filed by *either* appellant *or* the appellee. We can, however, distinguish *Pasqualone* from the case *sub judice*.

R.C. 3109.27 is part of Ohio's adoption of the Uniform Child Custody Jurisdiction Act. The purpose of the Act is to avoid jurisdictional competition and conflict with courts of other jurisdictions and to facilitate the speedy and efficacious resolution of custody matters so the child or children in question will not be caught in a judicial tug of war between different jurisdictions. See Uniform Child Custody Jurisdiction Act (1979), 9 U.L.A. 116. Here, appellant would frustrate the purpose of R.C. 3109.27 by attempting to create a jurisdictional conflict between the probate and juvenile courts.

In questions of subject-matter jurisdiction a theory of waiver cannot be invoked even where the jurisdictional issue was not raised in a timely fashion. See, *e.g., Gates Mills Invest. Co.* v. *Parks* (1971), 25 Ohio St. 2d 16, 20 [54 O.O.2d 157]; *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122 [35 O.O.2d 147]; Civ. R. 12(H). Stipulation to the truth of facts necessary to insure jurisdiction, however, may suffice to confer jurisdiction through estoppel. See *Beatrice Foods Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 50 [59 O.O.2d 76], at paragraph one of the syllabus.

Application of the rule of estoppel is necessarily limited to the factual ex-

igencies of each case. These exigencies in the instant case include the fact that appellant knew or should have known that she had an obligation to file an affidavit or pleading but did not do so. Here appellant's attorney was specifically asked at trial if he knew of any pending proceeding. He responded that to his knowledge only the probate court adoption motions were pending. If we were to deny subject-matter jurisdiction by a mechanistic interpretation of R.C. 3109.27, it would be possible for any party to completely obstruct a custody proceeding by willfully failing to file an R.C. 3109.27 affidavit or pleading. Such a result would not only contravene the clear intent of R.C. 3109.27 but could potentially render the custody statutes of this state a nullity. Moreover, such a result would hamstring our long-established rule that ultimately the issue must be what is in the best interests of the child. *In re Cunningham* (1979), 59 Ohio St. 2d 100 [13 O.O.3d 78]. Under the present circumstances a rigid interpretation of R.C. 3109.27 would only serve to prolong the agony of the children herein. Moreover, in instances when a public agency is a party, rigid adherence to R.C. 3109.27 would open the door to the contingency where a child, inarticulate, injured, neglected and found by the roadside, could not be provided for because the public agency could not ascertain the information required under R.C. 3109.27 with regard to the places where the child had lived within the past five years, and the names and present addresses of those persons with whom the child had lived during that period.

The prefatory note to the Uniform Child Custody Jurisdiction Act, *supra,* at 111-115, makes it quite clear that the Act is designed to prevent interfamilial custody tug of wars between differing jurisdictions, not create them. As we noted in *Pasqualone,* the mandatory jurisdictional requirement applies to "a parent" bringing an action. This view is entirely in conformity with the intent of the Uniform Child Custody Jurisdiction Act, as indicated above, and fulfills our mandate in statutory interpretation by presuming a just and reasonable result, as well as a result feasible of execution under the present circumstances. R.C. 1.47(C) and (D). We must therefore reject appellant's second argument.

### III

Finally, appellant avers as improper the court of appeals' use of the discussion in the resolution of prior assignments of error as the basis for refuting a subsequent assignment of error. It is well-established that an appeals court must address each assignment of error that is properly raised. App. R. 12(A); *Trauth* v. *Dunbar* (1983), 5 Ohio St. 3d 68, 70. We find the appellate court in the case herein properly addressed each assignment of error. It is readily apparent that a resolution of a redundant assignment of error through the incorporation by reference of a prior discussion or discussions in the same opinion is not a violation of App. R. 12(A).

We are compelled to affirm the court of appeals in case No. 83-1409. In

doing so we thereby render moot the custody question raised by the Kegleys, and dismiss the appeal in case No. 83-180.

*Judgment affirmed in case No. 83-1409.*
*Appeal dismissed in case No. 83-180.*

CELEBREZZE, C.J., SWEENEY, LOCHER and HOLMES, JJ., concur.

W. BROWN, J., concurs in judgment only.

C. BROWN and J. P. CELEBREZZE, JJ., dissent.

WILLIAM B. BROWN, J., concurring. I concur in judgment only based on my dissent to the decision in *Pasqualone* v. *Pasqualone* (1980), 63 Ohio St. 2d 96 [17 O.O.3d 58].

CLIFFORD F. BROWN, J., dissenting. The judgment of the court of appeals affirming the juvenile court which granted permanent custody of five minor Pihlblad children to the Stark County Welfare Department should be reversed.

Prior to the determinations of the juvenile court awarding permanent custody to the county, the children had been adjudged neglected or dependent. Before the juvenile court hearing on the motions for permanent custody, the mother, appellant Cathleen Pihlblad, had filed applications for placement for adoption of the five children in the Stark County Probate Court, and the appellant had filed motions in juvenile court to continue the permanent custody cases until the probate court ruled on the placement for adoption applications. The motions were overruled. At the permanent custody hearing in juvenile court the mother sought to introduce evidence concerning the suitability of her placement of the children for adoption. All such efforts were denied by the court.

Perhaps the evidence which the mother sought to introduce, if admitted, concerning the suitability of the persons with whom she had placed the children for adoption, might not have affected or changed the judgment which the juvenile court eventually reached, but the mother should have been afforded this procedural advantage of presenting her evidence. This conclusion flows from R.C. 2151.011(B)(11), which reads:

" 'Residual parental rights, privileges, and responsibilities' means those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the person, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support."

This statute gives the natural mother certain rights regarding her children which remain unaffected until an order of permanent custody has been entered against her. The right to direct placement of her children with another is not expressly enumerated therein, but the statute specifically states that the mother's rights include, but are not limited to, those expressly

enumerated. Logic dictates that if her right to consent to adoption remains unaffected, the right to request placement of her children with a particular, suitable custodian also remains. The mother here had filed petitions for adoption placement *before* the juvenile court granted permanent custody to the county. The court's reasoning that she had lost the "legal capacity to * * * consent" due to her children's status as neglected or dependent children is erroneous. Her rights are not forfeited until permanent custody is awarded to another, which had not yet occurred when she sought to exercise her statutory rights under R.C. 2151.011(B)(11). The juvenile court thus prematurely divested her of her parental rights.

Such parental rights have been deemed fundamental under the United States Constitution. *Meyer* v. *Nebraska* (1923), 262 U.S. 390. Deprivation of these rights without a full and fair hearing constitutes a denial of due process. *Stanley* v. *Illinois* (1972), 405 U.S. 645.

Therefore, I dissent.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.