OPINION
The following appeal arises from a dispute as to the payment of a bond forfeiture among past and present operators of a bail bond business. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. Sometime in 1982, defendant-appellant/cross-appellee, Robert Cregar ("Cregar"), entered the bail bond business with plaintiff-appellee/cross-appellant, Robert Harned ("Harned"), and defendant, Larry Daniel ("Daniel"). Their business, while not formally organized, was named Ace Bail Bonding Company ("Ace Bail Bond") and was principally located in Warren, Ohio.
Cregar and Daniel initially managed the day to day operations of Ace Bail Bond while Harned did not have an active role in running the business. Harned, however, was the owner of real estate which was used as security for the bonds the business issued. In exchange for the use of his property, Harned earned a premium of one and one-half percent of the face value of every bond written. Cregar and Daniel retained the remainder of the profits earned from the business and were principally responsible for any expenses of the business including bond forfeitures.
Sometime in 1991 or 1992, Harned sold the property used as security for the business necessitating a change in the way Ace Bail Bond was operated. On April 30, 1992, Cregar and Harned entered into a formal partnership agreement whereby each agreed to make a capital investment in Ace Bail Bond and equally share the profits, expenses, and responsibilities of the business. Cregar and Harned also created a separate partnership called ABB Realty Company ("ABB Realty"), as a holding company for the assets used as security for the bonds issued by Ace Bail Bond. Daniel was unable to commit the capital necessary to continue the business, and, consequently, was not a party to the partnership agreement.
Cregar and Harned continued to operate Ace Bail Bond pursuant to the terms of the partnership agreement until June 17, 1993. On that date, Cregar and Harned entered into an agreement terminating the partnership. In the termination agreement, Harned agreed to purchase all of Cregar's interest in Ace Bail Bond except those accounts obtained prior to the creation of the partnership on April 30, 1992. In addition, Harned agreed to indemnify Cregar from "any loss or damage which might otherwise be incurred by Cregar as a result of the operation of the business of the Partnership from the date of the formation of the Partnership through the Effective Date."
Following the execution of the termination agreement, Harned continued to operate Ace Bail Bond. Cregar, with the help of Daniel, collected on accounts obtained prior to the formation of the partnership for "Old" Ace Bail Bond. One of the accounts Cregar and Daniel continued to collect on was a bond they issued back in October of 1991 for one Jeri Patterson.
On July 19, 1996, the Trumbull County Court of Common Pleas rendered a judgment, jointly and severally, against Ace Bail Bond and ABB Realty for $5,000.[1] Specifically, the court sought payment for the forfeiture bond issued on behalf of Jeri Patterson, the same individual Ace Bail Bond issued a bond to in 1991, prior to the partnership agreement between Cregar and Harned. On October 9, 1996, Harned filed suit in the Warren Municipal Court claiming that he was entitled to indemnification from Cregar and Daniel for the $5,000 Patterson forfeiture. In his complaint, Harned alleged that he paid the Patterson forfeiture "simultaneous with the filing" of his cause of action.
The matter was tried to the court on November 6, 1997. At trial, all of the parties to this action testified as to how Ace Bail Bond was operated throughout the years. Harned argued that he was not responsible for the Patterson bond and explained his lack of involvement with Ace Bail Bond during that time period. Harned explained that before April 30, 1992, the date of his partnership agreement with Cregar, he simply owned the real estate that was held as security for the bonds and that Cregar and Daniel were solely responsible for any debts of the business including bond forfeitures. Cregar and Daniel did not deny that the expenses of the company, including bond forfeitures of smaller dollar amounts, were generally paid out of Ace Bail Bond's business account. Fortunately, the business rarely faced bond forfeitures. On one occasion, however, when Ace Bail Bond was forced to pay a $10,000 bond, all three parties equally split the cost.
In addition to testifying as to the operation of Ace Bail Bond, Cregar asserted at trial that he was not responsible for any of the business debts pursuant to the termination agreement of June 17, 1993, wherein Harned agreed to indemnify Cregar for all debts incurred "as a result of the business of the Partnership from the date of the formation of the Partnership through the Effective Date." Finally, Cregar questioned the propriety of Harned's cause of action, sounding in indemnity, after Harned admitted at trial that he did not pay the $5,000 Patterson bond forfeiture as he claimed in his complaint.
At the conclusion of the proceedings, the trial expressed confusion as to the intent of the parties with respect to bond forfeitures, particularly after multiple changes of ownership of Ace Bail Bond. However, the trial court ultimately concluded that, consistent with at least one earlier practice, each party would be responsible for thirty-three percent of the Patterson bond forfeiture. By judgment entry filed November 11, 1997, the trial court ruled that Harned was obligated to pay the Patterson bond and then entitled to recover one third of his forfeiture from Cregar and one third from Daniel. From this judgment, Cregar filed a timely notice of appeal and now asserts the following two assignments of error:
 "[1.] The trial court erred to the prejudice of [Cregar] in its failure to recognize that principals [sic] of indemnification and contribution require actual payment of an indebtedness before a cause of action arises.
 "[2.] The trial court erred to the prejudice of [Cregar] when it failed to recognize that the hold harmless clause in the agreement signed at the termination of the parties' partnership precluded [Harned] from recovering against [Cregar]."
In addition, Harned filed a timely notice of cross-appeal and now asserts the following assignment of error:
 "[1.] As against the manifest weight of the evidence, the trial court erred to [Harned's] prejudice by declaring that the parties split the bond forfeiture three (3) ways, instead of the two (2) ways provided in their agreement."
In Cregar's first assignment of error, he notes that Harned filed an action in indemnity to recover the entire $5,000 Patterson bond that he claimed was paid on behalf of the responsible parties, Cregar and Daniel. Cregar further notes that the trial court, in accordance with the evidence, did not award Harned indemnification from Cregar and Daniel for the Patterson bond, but, rather, awarded contribution. Although the two forms of reimbursement are similar, the Supreme Court of Ohio has recognized the following differences between the two causes of action:
 "Contribution, when it exists, is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and arises from principles of equity and natural justice. Indemnity, on the other hand, arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." Travelers Indemnity Co. v. Trowbridge (1975), 41 Ohio St.2d 11, paragraph two of the syllabus.
In his first assignment of error, Cregar does not fault the trial court for awarding Harned contribution. However, Cregar does fault the trial court for failing to recognize, after Harned admitted that he did not pay any portion of the Patterson bond, that a cause of action in contribution may not arise until "a party has paid more than his share of the joint obligation."National Mut. Ins. Co. v. Whitmer (1982), 70 Ohio St.2d 149, 152.
While Cregar correctly sets forth the law of contribution, he erroneously asserts that the trial court did not "recognize" these principles in its judgment entry of November 11, 1997. Indeed, the trial court specifically held that Harned was required to initially pay the Patterson bond judgment before he would be entitled to recover one third of the debt from Cregar and Daniel. In this regard, the trial court's judgment was in the form of a declaratory judgment properly determining the rights and responsibilities of the parties in paying a forfeited bond that involved three changes of ownership between Ace Bail Bond and "Old" Ace Bail Bond. See R.C. 2721.02 and State ex rel. Foremanv. Bellefontaine Municipal Court (1967), 12 Ohio St.2d 26
(recognizing that municipal courts can have jurisdiction in declaratory judgment actions.) This was well within the court's subject matter jurisdiction as set forth in R.C. 1901.18:
 "(A) [S]ubject to * * * section 1901.17 of the Revised Code, a municipal court has original jurisdiction within its territory in all of the following actions or proceedings and to perform all of the following functions:
"* * *
 "(3) In any action at law based on contract, to determine, preserve, and enforce all legal and equitable rights involved in the contract, to decree an accounting, reformation, or cancellation of the contract, and to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties to the contract."
While the better action would have been for a formal amendment of the complaint to reflect the fact that Harned did not pay the Patterson bond as previously alleged, we cannot fault the trial court for determining the ultimate degree of responsibility that each of the parties to this action will bear as a result of the parties' prior business relationship. Such a determination is in furtherance of judicial economy and we see no reason for another court to hear this matter, upon the actual payment of the debt by Harned, to determine that which has already been decided by the trial court. See, generally, Behrle v. Beam (1983), 6 Ohio St.3d 41,45. Cregar's first assignment of error is without merit.
In the second assignment of error, Cregar asserts that he has no responsibility for the Patterson debt. Specifically, Cregar asserts that he has no responsibility for the forfeiture based on an indemnity clause found in the 1993 termination agreement wherein Harned agreed to hold Cregar harmless for any loss incurred "as a result of the operation of the business of the Partnership from the date of the formation of the Partnership
through the Effective Date." (Emphasis added.)[2] Likewise, in his sole assignment of error in the cross-appeal, Harned asserts that the Patterson bond was issued during a period of time, before the partnership, where Cregar and Daniel accepted all the risks associated with the operation of Ace Bail Bond including bond forfeitures. In this regard, both parties allege that the trial court's judgment entry was against the manifest weight of the evidence.
When reviewing a claim that a trial court's judgment is against the manifest weight of the evidence, the Supreme Court of Ohio has held:
 "Judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. Accord Frankenmuth Mut. Ins. Co. v. Selz (1983), 6 Ohio St.3d 169, 172.
Additionally, the court has frequently stated:
 "[I]t is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. See Pasqualone v. Pasqualone (1980), 63 Ohio St.2d 96, * * *." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. (Parallel citations omitted.)
In this case, it is apparent that none of the parties expected that the Trumbull County Court of Common Pleas would seek payment of a bond issued five years after the fact. No discussion was made among the parties as to the payment of the Patterson bond in the creation or termination of the partnership agreement between Cregar and Harned. Indeed, all of the parties to this action, based on the three changes in ownership of Ace Bail Bond after 1991, collected fees generated from the Patterson bond. In allocating the risk of a bond forfeiture during the relevant time period that Ace Bail Bond was operated, and determining the intent of the parties when faced with a substantial bond forfeiture, the trial court relied on the parties' past practice. The trial court specifically found that the past practice of the parties was to divide such a bond forfeiture three ways.
As the trial court's final determination finds some support in the record, we cannot hold that the trial court's judgment is against the manifest weight of the evidence. Furthermore, we cannot fault the trial court for playing the role of Solomon and determining the fairest way to divide the Patterson bond forfeiture among the three parties who profited from the issuance of said bond. By way of analogy, Harned, Cregar, and Daniel were three diners at a restaurant who, when the check came, no one wanted to pay the bill. It is only fair that the parties share the cost of their meal. Cregar's second assignment of error, as well as Harned's assignment of error in his cross-appeal, are without merit.
Based on the foregoing, the judgment of the trial court is affirmed. It is further ordered that the parties equally share the costs of this proceeding. _________________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J.,
NADER, J., concur.
[1] The Court's judgment entry stated that both Ace Bail Bond "and [ABB Realty,] an Ohio partnership, surety and owner of real property subject to execution," were jointly and severally liable for the Patterson bond forfeiture. Cregar asserts that the above language means that the Ace Bail Bond partnership, in conjunction with the ABB Realty Partnership, are responsible for the debt. Pursuant to the indemnity clause found in the partnership termination agreement of June 17, 1993, Cregar argued that he should be held harmless for the partnership debt.
We reject Cregar's reading of the above quoted material as the court's forfeiture judgment is clearly against Ace Bail Bond, without any partnership designation, and the ABB Realty Partnership, jointly and severally.
[2] The indemnity clause is clearly limited to events occurring from April 30, 1992, the date of the partnership agreement between Harned and Cregar, and the dissolution of this partnership in 1993.