OPINION
{¶ 1} This timely, expedited appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellants, Brian and Karen Halstead, appeal the decision of the Common Pleas Court, Juvenile Division, Columbiana County, Ohio that denied their motion for legal custody of their nephew, Paul Halstead, and granted legal custody to Appellees, Chad and Pam Kendall. They make four arguments in support of their appeal.
 {¶ 2} First, the Halsteads contend that the trial court did not have jurisdiction to grant the Kendalls' motion for legal custody of Paul since they failed to file a parenting affidavit to their motion for legal custody. Although the governing statute requires such an affidavit, that requirement is subject to exceptions. For instance, a stipulation to the truth of facts needed to confer jurisdiction may suffice to confer jurisdiction by estoppel. In this case, the Halsteads had already invoked the trial court's jurisdiction by filing their own motion for legal custody and the facts demonstrate that Paul would not be subject to a judicial tug of war between different jurisdictions. Accordingly, the trial court had jurisdiction to grant the Kendalls' motion for legal custody.
 {¶ 3} Second, the Halsteads claim the trial court erred by not excluding the testimony of certain witnesses due to the Kendalls' failure to comply with a pending discovery request. But absent a motion to compel, the juvenile court does not abuse its discretion in admitting evidence not previously disclosed pursuant to a discovery request. In this case, the Halsteads filed their discovery request fourteen days before a scheduled hearing, never moved for a motion to compel the requested discovery, and never requested any sanction other than exclusion of the evidence subject to the discovery request. Thus, the trial court did not abuse its discretion when it admitted that evidence.
 {¶ 4} Third, the Halsteads argue that the trial court erred by not granting custody pursuant to certain statutes which indicate a preference for awarding custody of a child to a relative before a non-relative. But the language in those statutes is precatory, not mandatory. The trial court did not err by failing to rigidly apply those statutory preferences.
 {¶ 5} Finally, the Halsteads contend the trial court's decision to award legal custody of the child to the Kendalls is against the weight of the evidence. But Paul is very young, has not established a relationship with the Halsteads, has been in the Kendalls' care since he was first placed in temporary custody, and has developed a strong bond with the Kendalls. Given these facts, the trial court did not abuse its discretion when it awarded legal custody of Paul to the Kendalls. For these reasons, the trial court's decision is affirmed.
 Facts {¶ 6} Paul Halstead was born to Tammy and Kevin Halstead on April 18, 2002. On July 1, 2002, ten weeks after Paul was born, he was placed in the temporary custody of the Columbiana County Department of Job and Family Services (CCDJFS). The CCDJFS placed Paul with his foster parents, the Kendalls that same day. Paul has been in the Kendalls' care ever since. In addition, the juvenile court has found that Paul is a dependent child.
 {¶ 7} The Halsteads, Paul's paternal uncle and aunt, reside in Texas. After Paul was removed from his biological parents, the Halsteads contacted CCDJFS offering to take custody of Paul. They were not considered for placement at that time because they lived in Texas, which prevented the court from being able to evaluate whether their home and environment was appropriate for the child. A Texas children's services agency eventually completed a home study of the Halsteads' home for Paul's placement.
 {¶ 8} On May 3, 2004, the CCDJFS moved that Paul be placed into long term relative care with the Halsteads. The Halsteads then filed their motion for legal custody on May 14, 2004, along with a parenting affidavit. Apparently, the Halsteads waited to file their motion until the Texas children's services agency completed the home evaluation and investigation of them and filed a favorable report. The Kendalls then filed a competing motion for legal custody on May 20, 2004. A hearing on the matter was set for June 15, 2004.
 {¶ 9} Soon after the Kendalls filed their motion, the Halsteads moved to dismiss the Kendalls' motion, alleging that Appellees lacked standing and that the court could not award them legal custody because they did not properly move for legal custody. In June, the Kendalls filed an amended motion requesting that the court grant them legal custody of Paul instead of long-term, non-relative placement as they had previously requested.
 {¶ 10} On June 1, 2004, the Halsteads requested discovery from the Kendalls. They did not raise the issue again until June 15th, the day of the hearing, when they moved to preclude witnesses and exclude evidence which was not produced in accordance with the requested discovery. They did not request a continuance to complete the requested discovery. The juvenile court denied the motion in limine and proceeded with the scheduled hearing. At the conclusion of that hearing, the trial court granted the Kendalls' motion for legal custody of Paul.
 Jurisdiction {¶ 11} In the first of four assignments of error, the Halsteads argue:
 {¶ 12} "Whether the trial court erred in denying the Appellants [sic] motion to dismiss due to lack of subject matter jurisdiction or failing to properly file a parenting affidavit as required by ORC 3109.27?"
 {¶ 13} The Halsteads contend that R.C. 3109.27(A) provides that a party must file a parenting affidavit when moving for legal custody of a child. The Kendalls failed to file that affidavit. Thus, the Halsteads contend the trial court did not have jurisdiction to grant the Kendalls' motion for custody and should have dismissed that motion.
 {¶ 14} R.C. 3109.27(A) provides, in part:
 {¶ 15} "Each party in a parenting proceeding, in the party's first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the name and present address of each person with whom the child has lived during that period."
 {¶ 16} The pleading or affidavit shall also include information regarding whether the party has participated in any litigation concerning the child or the parents, whether the party has information about any parenting proceeding concerning the child in another court, whether the party knows of any non-party who is involved with the child's custody or has visitation rights with the child, and whether the party has ever been convicted of or pled guilty to any criminal offense involving a child being abused or neglected or caused any child to be adjudicated abused or neglected. R.C. 3109.27(A).
 {¶ 17} The Ohio Supreme Court has held that this statute creates a mandatory jurisdictional requirement on any parent bringing an action for custody. Pasqualone v. Pasqualone (1980), 63 Ohio St.2d 96, paragraph one of the syllabus. But it has also recognized exceptions to this requirement. For instance, in In re Palmer (1984), 12 Ohio St.3d 194, 196, it held that a trial court could have jurisdiction in a custody proceeding in the absence of a parenting affidavit if the parties stipulate to the truth of facts needed to confer jurisdiction. The court came to this conclusion because R.C. 3109.27 is a part of Ohio's Uniform Child Custody Jurisdiction Act and that Act's purpose is "to avoid jurisdictional competition and conflict with courts of other jurisdictions and to facilitate the speedy and efficacious resolution of custody matters so the child or children in question will not be caught in a judicial tug of war between different jurisdictions." Id., citing Uniform Child Custody Jurisdiction Act (1979), 9 U.L.A. 116. As the court recognized, mechanical application of R.C. 3109.27 could allow a party to completely obstruct a custody proceeding by willfully failing to file an affidavit. Id. at 197. This would contravene the clear intent of R.C. 3109.27 and could potentially render Ohio's custody statutes a nullity. Id. And the Court found that to strictly apply R.C. 3109.27 would restrict its longstanding rule that the ultimate issue must be what is in the child's best interest. Id.
 {¶ 18} When ruling on the Halsteads' motion to dismiss the Kendalls' motion for custody, the juvenile court found that it already had subject matter jurisdiction over the parties due to the nature of the proceedings as well as the filings by appellants and CCDJFS. Furthermore, the purpose of R.C. 3109.27 is to ensure that no jurisdictional competitions arise with other courts and to facilitate the speedy resolution of custody matters so that children will not be held in the middle of "a judicial tug of war between different jurisdictions." Id. at 196. Here, there is no allegation that Paul was ever involved with another court. He has been under this juvenile court's jurisdiction since it found him dependent and he was removed from his parents' care and placed with the Kendalls. This occurred when Paul was only two-and-a-half months old. The record demonstrates that he has been in the Kendalls' care since that time and that the juvenile court has continuously been involved with his case. Furthermore, his biological parents have been involved with this court since Paul was removed from their care and even attended the custody hearing. Thus, the juvenile court did have subject matter jurisdiction in this case. The Halsteads' first assignment of error is meritless.
 Discovery {¶ 19} In their second assignment of error, the Halsteads argue:
 {¶ 20} "Whether the trial court erred in denying the Appellants [sic] motion to preclude witnesses and exclude evidence for failing to properly respond to the Appellants [sic] discovery request?"
 {¶ 21} The Halsteads contend that they submitted their discovery request the day the matter was set for a hearing and two days after the child was examined by an expert. They contend that this gave the Kendalls plenty of time to respond to their discovery request. They argue that the Kendalls' failure to provide the requested discovery was prejudicial and that the trial court abused its discretion by failing to exclude the evidence which was not produced pursuant to the pending discovery request.
 {¶ 22} A juvenile court has broad discretion when administering discovery in a juvenile case. In re Johnson (1989), 61 Ohio App.3d 544,548. Its decisions may only be reversed when it abuses that discretion. In re Lucas (1985), 29 Ohio App.3d 165, 171. An abuse of discretion is more than an error of law or judgment; rather, it is an unreasonable, arbitrary or unconscionable attitude by the trial court.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} Ohio's appellate courts have consistently held that, absent a motion to compel, the juvenile court in juvenile proceedings does not abuse its discretion in admitting evidence not previously disclosed pursuant to a discovery request. See In re J.L., 8th Dist. No. 84368,2004-Ohio-6024, ¶ 25; In re Funk, 11th Dist. Nos. 2002-P-0035, 2002-P-0036, 2002-Ohio-4958, ¶ 28; In re Jeremy K. (July 27, 2001), 6th Dist. No. E-00-051; In re Jeromie D. (Nov. 30, 2000), 6th Dist. No. L-00-1030; In re Gilbert (Sept. 28, 1987), 12th Dist. No. CA86-10-144.
 {¶ 24} This case is virtually indistinguishable from some of the cases cited above. For instance, in Funk, the local Department of Job and Family Services sought an order terminating parental rights and for permanent custody of the appellant's four children in December 2001, after about sixteen months of temporary custody. On February 22, 2002, the appellant filed a discovery request. The appellant did not raise any issue regarding a failure to provide discovery until fourteen days later, March 8, 2002, the scheduled day of the hearing on the motion for permanent custody. At that time, the appellant moved to exclude the testimony of certain witnesses based on the failure to comply with the discovery request. The juvenile court denied the motion. At the conclusion of the hearing, it granted the motion to terminate parental rights and granted permanent custody to the local Department of Job and Family Services.
 {¶ 25} On appeal, the appellant argued the juvenile court erred by not excluding the testimony of those witnesses. The Eleventh District disagreed.
 {¶ 26} "Here, appellant concedes that after receiving no response to his request for documents, he never filed a motion to compel with the juvenile court. Instead, he waited until the day of the permanent custody hearing, nearly two weeks after filing his document request, to raise the issue with the court for the first time. Such delay is unacceptable under the circumstances in this case. Whether or not the parties informally conducted discovery in the past, there was a procedure available to obtain the desired information. Accordingly, we conclude that the juvenile court did not abuse its discretion when it denied appellant's motion in limine. See, e.g., In re Jeremy K. (July 27, 2001), 6th Dist. No. E-00-0051, 2001 WL 844649, at 3 ('Absent a motion to compel, the trial court in juvenile proceedings does not abuse its discretion in admitting evidence not previously disclosed by the state.')." Id. at ¶ 28.
 {¶ 27} The facts in this case are, for purposes relevant to this issue, indistinguishable from those in Funk. In each case, the party requesting discovery did so about two weeks prior to the scheduled hearing date. Neither party moved for an order to compel discovery. And in each case, the complaining party did not bring the failure to comply with the discovery request to the juvenile court's attention until the day of the hearing.
 {¶ 28} Ohio courts have consistently applied the plain language of Juv. R. 24. That Rule only allows a juvenile court to impose discovery sanctions after a party has obtained an order compelling that discovery. The Halsteads did not request discovery in this expedited matter in a timely fashion, did not request an order to compel that discovery, did not bring the failure to provide discovery to the juvenile court in a timely fashion, and never requested a continuance to complete the discovery. Thus, the juvenile court did not abuse its discretion by refusing to take any action to facilitate discovery. The Halsteads' second assignment of error is meritless.
 Presumption in Favor of Placement with Relatives {¶ 29} In their third assignment of error, the Halsteads argue:
 {¶ 30} "Whether the trial court erred in denying the Appellants [sic] motion for custody under ORC 2151.353, 2151.412 and 2151.31.4?"
 {¶ 31} The Halsteads contend that according to R.C. 2151.314(B)(2) and R.C. 2151.412(G)(2), children who are removed from their parents should, whenever possible, be placed with other family members. They point out that they acted promptly when they learned Paul had been removed from his parents. They contacted CCDJFS that day, maintained contact with CCDJFS throughout the entire time, and did everything that was asked of them. They believe that since they are suitable relatives, the juvenile court should not have even considered giving custody to the Kendalls. The Halsteads argue that it is important for Paul to know he has relatives who love him and that he was raised by family. Finally, they point out that there was no evidence that their home would not be suitable for Paul.
 {¶ 32} The Halsteads cite to three statutes for support. First, they cite to R.C. 2151.353. But they make no argument regarding this section. It deals with the disposition of abused, neglected, and dependent children. Furthermore, it does not distinguish between granting custody of a child to a relative versus a non-relative at the dispositional hearing. In re Patterson (1999), 134 Ohio App.3d 119, 130; R.C. 2151.353(A). Thus, it does not support their argument on appeal.
 {¶ 33} The Halsteads next cite R.C. 2151.314(B)(2). But this section also does not apply to their argument. R.C. 2151.314 deals with the initial placement of a child in shelter care or with relatives. While the section referred to by appellants shows a preference for the temporary placement of a child with suitable relatives, the Halsteads were not suitable for placement when Paul was removed from his parents because they resided in Texas and the court had no way of knowing if their home was suitable for Paul.
 {¶ 34} The Halsteads' finally cite R.C. 2151.412 in support of their argument. It provides, in relevant part:
 {¶ 35} "(G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 36} "(1) A child who is residing with or can be placed with the child's parents within a reasonable time should remain in their legal custody * * *;
 {¶ 37} "(2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family;
 {¶ 38} "(3) If a child described in division (G)(2) of this section has no suitable member of the child's extended family to accept legal custody, the child should be placed in the legal custody of a suitable nonrelative who shall be made a party to the proceedings after being given legal custody of the child."
 {¶ 39} The Halsteads contend that the juvenile court failed to follow the mandates of this section. But Ohio's courts have consistently recognized that the language in R.C. 2151.412(G) is precatory, not mandatory. In re Hiatt (1993), 86 Ohio App.3d 716, 722; In reRollinson (April 27, 1998), 5th Dist. Nos. 97 CA 00243, 97 CA 00206; Inre Dixon (Nov. 29, 1991), 6th Dist. No. L-91-021. As the court in Hiatt
stated, R.C. 2151.412 provides, "rather oxymoronic `mandatory guidelines.'" Id. at 722. Thus, this statute does not command the juvenile court to act in a specific manner. Instead, it sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them. Therefore, the juvenile court's judgment is not in error simply because the court chose not to follow one of these suggested guidelines. The Halsteads' third assignment of error is meritless.
 Manifest Weight {¶ 40} In their final assignment of error, the Halsteads argue:
 {¶ 41} "Whether the trial court's decision was supported by the weight of the evidence?"
 {¶ 42} The Halsteads argue that the trial court's decision was against the manifest weight of the evidence for a variety of reasons. They note that CCDJFS, the guardian ad litem, and the biological father all recommended placing Paul with them. They also note that while the biological mother preferred that Paul be placed with the Kendalls, she did not have an objection to his being placed with the Halsteads. The Halsteads also argue that the court did not properly consider the importance of preserving family identity and familiar sociological circumstances and the fact that they acted promptly and did everything in their power to gain custody of Paul.
 {¶ 43} On appeal, we will not reverse an award of legal custody absent an abuse of discretion. In re Nice (2001), 141 Ohio App.3d 445, 455. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore at 219. If the court's decision on the child's best interest regarding legal custody is not supported by competent, credible evidence, then it is unreasonable and we may reverse it. Nice
at 455. The juvenile court's standard of review is not clear and convincing evidence, as it is in a permanent custody proceeding, but is merely preponderance of the evidence. Id; R.C. 2151.414(B)(1) and (E); R.C. 2151.415(B); Juv. R. 29(E).
 {¶ 44} In this case, the evidence demonstrates that both the Kendalls and the Halsteads would properly care for Paul and make suitable custodians for him. All those involved testified as such, including the CCDJFS caseworker, the guardian ad litem, and both biological parents. The question in this case comes down to what is to be given more weight — the relationship that has formed between Paul and his foster parents or the blood relationship between Paul and his uncle's family.
 {¶ 45} The juvenile court found that by the hearing date, Paul had bonded with the Kendalls as his parents and bonded with the Kendalls' four-year-old daughter as his sister. The court expressed its dissatisfaction with the circumstances of the case. It noted that Appellants acted promptly and showed consistent interest in Paul and his placement with them and expressed frustration that administrative delays kept them from being able to move for legal custody earlier. But it found that, practically speaking, the Halsteads did not have a bond with Paul because they live in Texas. Significantly, while they were awaiting the completion of the home evaluation, the Halsteads did not have contact with Paul.
 {¶ 46} The court concluded that while the presumption favored placement with the Halsteads, this was not in Paul's best interest. It found that Paul's overwhelming best interest would be served by remaining in the Kendalls' care. The juvenile court opined that Paul had a crucial, bonded relationship with the Kendalls as the only family he has known. Due to the distance between Ohio and Texas, economic constraints, and Paul's young age, the court concluded that a transition to the Halsteads' family could not reasonably be achieved without potentially serious mental and emotional harm to Paul. Finally, it stated that placement with the Halsteads was inappropriate given the circumstances of this case.
 {¶ 47} We agree that it is unfortunate that the slow pace of the various agencies involved in this case have afforded Paul with an opportunity to build a bond with his foster family at the expense of a similar bond with the Halsteads. But the fact that those circumstances are unfortunate does not dictate what is in Paul's best interests. The evidence produced at the hearing supports the trial court's decision.
 {¶ 48} The CCDJFS caseworker, guardian ad litem, and Paul's father all expressed their belief that Paul should be placed with his relatives, the Halsteads. But Paul's mother thought it would be best if Paul stayed with the Kendalls.
 {¶ 49} Significantly, a psychologist who examined Paul testified about the difficulties Paul would face if the juvenile court granted the Halsteads' motion for legal custody. He opined that if the court granted custody to the Halsteads, Paul would need a several-month transition phase including counseling and a gradual move from the Kendalls to the Halsteads. He expressed concerns that Paul would suffer separation anxiety and would become anxious and unsteady. He also opined that Paul would suffer some grief and loss issues. Additionally, he noted that acid reflux disease is often stress related and the stress put on Paul by moving could exaggerate his acid reflux condition. The juvenile court asked Dr. Sylvies, hypothetically, if it awarded custody to the Halsteads could the transition be accomplished. Dr. Sylvies opined that the Halsteads would have to establish a relationship with Paul before such a transition, which would be difficult to accomplish.
 {¶ 50} In addition, the evidence demonstrated that Paul had not spent enough time with the Halsteads to establish a meaningful relationship with them. The Halsteads did not start visiting Paul until after the home study of their home was completed and they were approved for his placement. Since that time, the Halsteads have had seven visits with Paul, first supervised and then unsupervised, totaling approximately 18 hours.
 {¶ 51} The goal of any disposition of a child is to act in the child's best interests. In re Hitchcock (1996), 120 Ohio App.3d 88, 102
citing In re Baby Girl Baxter (1985), 17 Ohio St.3d 229. This must be the court's primary and overriding concern in any child custody case. Id. In its judgment, the juvenile court stated that it was acting in what it believed to be Paul's best interests. And its decision is supported by the fact that Paul has spent the vast majority of his life with his foster parents. As the trial court concluded, Paul's foster family is the only family he has ever known. Furthermore, Appellants have, to date, spent only about eighteen hours with Paul. This underscores the psychologist's conclusion that they have not yet established a relationship with Paul and that giving legal custody of Paul to Appellees would likely suffer some emotional difficulties.
 {¶ 52} Given these facts, this case is not very different than other unfortunate situations other appellate districts have faced. Those cases demonstrate, courts should not casually disregard the relationship a very young child has established with a foster family in order to give a relative legal custody of a child. For instance, in In re Wright (July 11, 2001), 5th Dist. No. 00 CA 27, a child was in an agency's custody and was placed with a foster home when an out-of-state maternal grandmother sought legal custody of the child. The juvenile court denied the grandmother's request for legal custody even though it concluded that she would be a suitable custodian. The appellate court affirmed that decision because of the "the undeveloped bond" between the child and grandmother and "the destabilizing effect of removing a very young child from his foster family." Id. at 4.
 {¶ 53} The Eighth District was also faced with a similar situation inIn re Harris (Nov. 2, 2000), 8th Dist. No. 76631. In that case, the child's mother and father wished that the paternal grandmother, rather than the agency, be awarded legal custody. The juvenile court disagreed and awarded legal custody to the agency. The appellate court affirmed this decision because "[t]he child was in [the agency's] custody during the course of the proceedings for approximately two and one-half years and in appellant's custody for only the first four months of her life. The child has developed strong bonds with the foster family with whom she has had a stable relationship for several years and needs a more permanent arrangement." Id. at 3.
 {¶ 54} Given the facts in this case, the trial court's decision was not unreasonable, i.e., an abuse of discretion. There is both competent, credible evidence and caselaw supporting the trial court's decision. The Halsteads' fourth assignment of error is meritless.
 Conclusion {¶ 55} Each of the Halsteads' assignments of error are meritless. The trial court had jurisdiction to grant the Kendalls' motion for legal custody. It did not abuse its discretion by admitting evidence not produced in discovery since the Halsteads never moved to compel the production of the requested discovery. Ohio's statutes which indicate that a court should grant custody to a relative before granting custody to a nonrelative are not mandatory. And competent, credible evidence supports the trial court's decision to grant the Kendalls' motion for legal custody. Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurring in part and dissenting in part. See separate opinion attached.
Vukovich, J., concurs.