OPINION
Plaintiff-appellee, Tony R. Logan, and defendant-appellant, Opal A. Powell, had a child together, Brandi F. Logan ("Brandi"), born January 16, 1993. The parties never married. Logan lives in Mason County, Kentucky, while Powell and Brandi live in Brown County, Ohio.
On February 11, 1997, an order was entered in the Circuit Court of Mason County, Kentucky (the "Kentucky court"). The order granted Logan's motion for visitation with his daughter and established a visitation schedule effective February 15, 1997. By order entered April 24, 1997, the Kentucky court ordered that its February 11, 1997 order remain in effect.
By motion filed July 18, 1997 in the Brown County Court of Common Pleas, Juvenile Division (the "trial court"), Logan submitted the Kentucky court orders and asked that they be enforced and given full faith and credit by the state of Ohio. By entry filed the same day, the trial court gave full faith and credit to the Kentucky court orders and ordered enforcement of visitation.
By motions filed July 29 and August 1, 1997, Powell sought to vacate the trial court's July 18, 1997 entry on the grounds that (1) the trial court lacked jurisdiction to accept and file parenting decrees of another state; (2) the entry was issued without notice to Powell or a hearing; (3) the Kentucky court orders were void for want of jurisdiction; and (4) the orders were filed in the trial court without proper authentication. Following a hearing held on August 1, 1997, the trial court overruled both motions by judgment entry filed September 8, 1997.
Powell timely filed this appeal and raises the following three assignments of error:
Assignment of Error No. 1:
 The trial court erred in refusing to allow the introduction of evidence to show the foreign decree filed by the appellee was invalid.
Assignment of Error No. 2:
 The trial court erred in allowing the foreign judgment and motion to be filed and (1) not requiring that copies be served upon appellant (2) not requiring that a hearing be held and (3) granting the relief requested at the time of filing[.]
Assignment of Error No. 3:
 The trial court erred in allowing the filing and enforcement of a foreign parenting decree without the proper authentication[.]
In her first assignment of error, Powell argues that the trial court's refusal, during the August 1, 1997 hearing, to allow Powell to introduce evidence to show that the Kentucky court orders were invalid for want of personal and subject matter jurisdiction violated the Uniform Child Custody Jurisdiction Act ("UCCJA") codified in R.C. 3109.21 through 3109.36. The record shows that during the hearing, Powell argued that the Kentucky court did not have jurisdiction under the UCCJA to enter its orders. The trial court, noting that both parties had appeared before the Kentucky court regarding Logan's motion for visitation and thereby had consented to the jurisdiction of that court, summarily rejected Powell's argument.
"The purpose of the [UCCJA] is to avoid jurisdictional competition and conflict with courts of other jurisdictions and to facilitate the speedy and efficacious resolution of custody matters so the child or children in question will not be caught in a judicial tug of war between different jurisdictions." In re Palmer (1984), 12 Ohio St.3d 194, 196. Judgments of sister states, which are issued by courts with personal and subject-matter jurisdiction, are generally entitled to receive full faith and credit in every other state. Article IV, Section 1, United States Constitution.
The issue in the case at bar is the extent of the trial court's jurisdiction to recognize and enforce the Kentucky court orders. The specific question is whether the Kentucky court had jurisdiction under UCCJA to enter its visitation orders.
R.C. 3109.30(B) governs enforcement of foreign decrees and states that:
 The courts of this state shall recognize and enforce an initial or modification decree of a court of another state if that court assumed jurisdiction under statutory provisions substantially in accordance with sections 3109.21
to 3109.36 of the Revised Code or if the decree was made under factual circumstances meeting the jurisdictional standards of sections 3109.- 21 to 3109.36 of the Revised Code, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of these sections.
"Thus, an Ohio court is statutorily bound to recognize and enforce a custody decree of another state court that has jurisdiction under the UCCJA if the custody decree has been entered in conformity with UCCJA requirements." Fox v. Fox (Mar. 29, 1988), Tuscarawas App. No. 87AP100074, 3, unreported. "Conversely, an Ohio court should not recognize or enforce foreign child custody decrees where the foreign court did not assume jurisdiction under statutes substantially in accordance with the UCCJA," or where "factual circumstances did not meet the UCCJA jurisdictional standards." Id.
Logan cites In re McClurg (1992), 78 Ohio App.3d 465, for the proposition that "Kentucky statutes enacting the UCCJA are `substantially in accordance' with Ohio's UCCJA statutes." Logan contends that as a result, the trial court was required to recognize and enforce the Kentucky court orders pursuant to R.C.3109.30(B). We disagree.
While Logan is correct that Kentucky statutes enacting the UCCJA are substantially in accordance with Ohio's UCCJA statutes, that does not end the inquiry. Before an Ohio court can enforce a foreign decree, "the court must also make a two-part jurisdictional analysis: first, it must determine whether the foreign court had jurisdiction under the UCCJA to render the decree, and second, it must determine whether the foreign court properly exercised jurisdiction under the UCCJA." In re Andrews (Sept. 30, 1991), Lake App. No. 90-L-15-148, unreported, at 2.
Kentucky enacted the UCCJA in KRS 403.400 through 403.620. KRS 403.420(1) sets forth the legal prerequisites necessary for Kentucky courts to have jurisdiction under the UCCJA as follows:
 (a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
 (b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
 (c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
 (d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
The trial court determined that the Kentucky court had jurisdiction to enter its visitation orders because both parties appeared before the Kentucky court, and thus consented to its jurisdiction.
It is well-established that a judgment of a sister state's court is subject to collateral attack in Ohio if there was no personal jurisdiction under the sister state's internal law to render the judgment and, under that law, the judgment is void, unless the defendant submitted to the jurisdiction of the sister state's court by an appearance thereby precluding collateral attack in this state. Litsinger Sign Co., Inc. v. The American Sign Co., Inc. (1967), 11 Ohio St.2d 1, paragraph one of the syllabus. We agree with the trial court that by appearing before the Kentucky court regarding Logan's motion for visitation, Powell submitted to the personal jurisdiction of that court thereby waiving objection to the assertion of personal jurisdiction over her by that court.
Unlike personal jurisdiction, however, subject matter jurisdiction may neither be waived nor conferred upon a court by the parties. State v. Wilson (1995), 73 Ohio St.3d 40, 46. "Thus, a party's failure to challenge a court's subject matter jurisdiction cannot be used, in effect, to bestow jurisdiction on a court where there is none." Id. Lack of subject matter jurisdiction may be raised sua sponte by an appellate court. State ex rel. White v. Cuyahoga Metro. Hous. Auth. (1997),79 Ohio St.3d 543, 544.
In the case at bar, the record is totally devoid of any evidence that the Kentucky court properly exercised jurisdiction under the UCCJA as set forth in KRS 403.420[1], or that it even had jurisdiction to enter the visitation orders. In its orders granting visitation to Logan, the Kentucky court is silent as to whether it had subject matter and personal jurisdiction over Logan's motion for visitation. Nor do the orders indicate whether the court had jurisdiction over any of the proceedings regarding Brandi. There is no reference in the record as to whether a custody order was ever issued, or if it was indeed issued, whether it was issued in Kentucky or Ohio.
During the hearing, in response to the trial court's question about whether Logan had "been found to be the father under valid laws in Kentucky[,]" counsel for Powell admitted that Logan had acknowledged paternity. However, the record is totally devoid of any paternity order or entry. Nor does the record indicate in which Kentucky circuit court paternity was acknowledged. Reference was also made during the hearing that the action before the Kentucky court was a URESA (Uniform Reciprocal Enforcement of Support Act) action. However, it is well-established that in an action "that was initiated pursuant to URESA, the court has no subject matter jurisdiction to consider visitation and custody matters." In re Byard (1996), 74 Ohio St.3d 294, 296; R.C.3115.29. See, also, Gera v. Gera (Ky.App. 1990), 796 S.W.2d 13.
Finally, in a motion for contempt filed August 26, 1997, Logan stated that he resided in Mason County, Kentucky while Powell resided in Brown County, Ohio. Under KRS 403.420(1)(a), "home state" jurisdiction is acquired when the child and a parent have been living in the state for six months or more. Cann v. Howard (Ky.App. 1993), 850 S.W.2d 57, 60. While Logan stated he lived in Kentucky, there is no evidence in the record as to how long he has been living in Kentucky. With regard to Brandi, the record is devoid of any evidence as to whether she has ever lived in Kentucky, and if she has, how long. Nor is there any evidence to show that it was in the best interest of Brandi for Kentucky to assume jurisdiction pursuant to KRS 403.420(1)(b).[1]
In light of all of the foregoing, we find that the trial court erred in summarily assuming that, based on the parties' appearance before the Kentucky court and nothing much more, the Kentucky court had subject matter jurisdiction to enter its visitation orders regarding Brandi. Powell's first assignment of error is sustained and the trial court's September 8, 1997 entry denying Powell's motions to vacate is reversed. This cause is remanded to the trial court with instructions to conduct an evidentiary hearing to determine first whether the Kentucky court had subject matter jurisdiction under the UCCJA to enter its visitation orders, and if so, whether the Kentucky court properly exercised jurisdiction under the UCCJA.
In her second assignment of error, Powell argues that the trial court's granting of Logan's motion seeking full faith and credit and enforcement of the Kentucky court orders without giving her any notice or opportunity for a hearing or response was in violation of Civ.R. 5(A) and her due process rights. The record shows that Logan's motion and the trial court's entry granting the motion were filed on the exact same day. The record also shows that notice was not received by Powell until after the fact. During the hearing, counsel for Logan stated that once he realized he had sent notice to an attorney who was no longer Powell's attorney, he sent notice to Powell, who received it.
Civ.R. 5(A) requires that every written motion other than one which may be heard ex parte shall be served upon each of the parties. Logan argues that the filing of a foreign decree pursuant to R.C. 3109.32 is such a motion that can be heard ex parte and that as a result, service was not required. Logan also argues that R.C. 3109.32(A)[2] does not require that a hearing be held whenever a foreign decree is filed.
While a reading of R.C. 3109.32(A) might suggest that the filing of a foreign decree does not mandate a hearing, we have not found, and Logan has not cited any cases supporting his assertion that the filing of a foreign decree pursuant to R.C. 3109.32(A) is similar to a motion that can be heard ex parte. In his motion, Logan did not allege that an emergency existed justifying an ex parte order, or that failure by the trial court to grant his motion ex parte would be prejudicial to Brandi or himself. We also note that, contrary to Logan's contention, his motion was more than the mere filing of a foreign decree. His motion sought to have the Kentucky court orders be given full faith and credit and enforced in Ohio.
It is well-established that "[t]he fundamental requisite of due process of law is the opportunity to be heard." Mullane v. Central Trust Co. (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 657. An elementary requirement of due process in any proceeding which is to be accorded finality is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id.; Regional Airport Auth. v. Swinehart (1980), 62 Ohio St.2d 403, 406. "[I]n order for notice to be effective, it `must be granted at a meaningful time and in a meaningful manner.'" State ex rel. Nicodemus v. Indus. Comm. (1983), 5 Ohio St.3d 58, 60.
In the case at bar, while Powell did eventually receive notice of the filing of Logan's motion, she did not receive it until after the motion was filed and granted. We cannot say that such notice was given at a meaningful time or in a meaningful manner. As a result of the opposing counsel's mistake and the trial court's action in granting Logan's motion ex parte and the same day it was filed, Powell was compelled to file a motion to vacate to give herself an opportunity to be heard and to present her objections. While the filing of the motion to vacate resulted in a hearing, we nevertheless find that under the circumstances of this case, Powell was not provided with reasonable notice of Logan's motion and thus due process was not satisfied. Appellant's second assignment of error is sustained.
In her third assignment of error, Powell argues that the trial court lacked jurisdiction to enforce the Kentucky court orders because Logan did not comply with the authentication requirement of the Uniform Enforcement of Foreign Judgments Act ("UEFJA") as set forth in R.C. 2329.022.
R.C. 2329.022 requires that copies of foreign judgments be authenticated in accordance with Section 1738, Title 28, U.S. Code. The record shows that certified copies of the Kentucky court orders were filed with the trial court on July 18, 1997. At the close of the August 1, 1997 hearing, the trial court overruled Powell's motions to vacate with the stipulation that authenticated copies of the orders in compliance with R.C.2329.022 be submitted. Authenticated copies of the orders were subsequently filed with the trial court on August 12, 1997.
Unlike appellant and the trial court, we find that the provisions of the UEFJA are inapplicable to foreign visitation decrees. The language of the UEFJA ("judgment creditor" and "judgment debtor") as well as its placement in Chapter R.C. 2329 (Execution Against Property) strongly suggest that its scope is limited to final money judgments. Fox, Tuscarawas App. No. 87AP100074, at 4. R.C. Chapter 2329, the purpose of which is to protect the rights of judgment creditors by authorizing execution of property against debtors, governs the procedures for such execution. Ohio Sav. Bank v. Ambrose (1990), 56 Ohio St.3d 53, 55. Child visitation orders are outside such scope and such purpose.
Rather, we find that the filing of foreign custody and/or visitation decrees for purposes of enforcement in Ohio is explicitly covered by R.C. 3109.32. See Fox, Tuscarawas App. No. 87AP100074, at 4. R.C. 3109.32(A) requires the filing of a certified copy of a foreign parenting decree in order to seek enforcement of that decree. The record shows that certified copies of the Kentucky court orders were filed in the trial court before the trial court filed its judgment entry. Powell's third assignment of error is overruled.
Judgment affirmed in part, reversed in part and remanded.
POWELL, P.J., and WALSH, J., concur.
[1] We find that, based upon the language in KRS 403.420(1)(c) and (d), neither provision applies to the case at bar.
[2] R.C. 2109.32(A) states that:
 A certified copy of a parenting decree of another state may be filed in the office of the clerk of any court of this state that renders parenting decrees. The clerk shall treat the decree in the same manner as a parenting decree of an appropriate court of this state. Until modified, a parenting decree so filed has the same effect and shall be enforced in like manner as a parenting decree rendered by a court of this state.