OPINION
{¶ 1} Appellants, Shane and Chris Leveck, bring this consolidated appeal from Hancock County Common Pleas Court, Juvenile Division, decisions granting permanent custody of their children, Anthony, Ashley, and Icey Leveck to Appellee, Hancock County Department of Job and Family Services, Children's Protective Services Unit ("CPSU"). The Levecks assert that they are learning disabled and that CPSU failed to devise and implement a case plan reasonably calculated to achieve reunification with either parent, concluding that the trial court erred in terminating their parental rights. Because the record contains sufficient competent, credible evidence supporting that CPSU took appropriate steps to ascertain the Levecks' cognitive abilities and made reasonable case planning and diligent efforts toward reunification, we affirm the judgment of the trial court.
 {¶ 2} Facts and procedural posture relevant to issues raised on appeal are as follows: Chris and Shane Leveck are the biological parents of five children: Steven, Anthony, Nicholas, Ashley, and Icey. On August 14, 2001, these children were placed in emergency temporary custody of CPSU based upon information that the children were unsupervised, neglected, and living in unsanitary and dangerous conditions. Each child was subsequently adjudicated neglected and dependent. At an October 11, 2001 dispositional hearing, the court granted CPSU temporary custody of Ashley and Icey, while Anthony, Nicholas, and Steven were placed with relatives. In addition, a case plan was approved by all parties. Temporary custody of Anthony was subsequently returned to CPSU when relative placements were unsuccessful.
 {¶ 3} Pursuant to the case plan, the Levecks were required to undergo mental health and substance abuse assessments, follow through with any resulting recommendations, attend parenting classes, provide a safe and stable home, and cooperate with CPSU and counselor recommendations. The plan also provided for visitation and required the parents to maintain their relationship with their children.
 {¶ 4} On June 12, 2002, CPSU moved for permanent custody of Anthony, Ashley, and Icey, citing the Levecks' lack of devotion and failure to progress with case plan objectives. The trial court thereafter entered separate judgments awarding permanent custody of Anthony, Ashley, and Icey to CPSU on September 17, 2002. From these judgments the Levecks appeal, presenting the following single assignment of error for our review:
 The Lower Court erred to the prejudice of the Appellants in granting permanent custody of the minor children to the Hancock County Department of Job and Family Services because the agency failed to implement and devise a case plan reasonably calculated to achieve the goal of reunification with either parent.
 {¶ 5} Within the assigned error, the Levecks claim to have comprehension difficulties, arguing that their caseworkers lacked sufficient training and failed to take reasonable steps to determine whether they were learning disabled or whether alternative measures should have been employed to facilitate reunification efforts. The Levecks maintain that the failure to recognize their deficiencies prevented the case plan from being reasonably calculated or implemented toward reunification, concluding that the trial court abused its discretion by terminating their parental rights.
 {¶ 6} We note at the outset that a parent's right to raise his or her child is an "essential" and "basic civil right."[1] Parents have a "fundamental liberty interest" in the care, custody, and management of their children.[2] The rights and interests of a natural parent are not, however, absolute: where a court finds that permanent custody is appropriate under circumstances of a particular case and all due process safeguards have been followed, whatever residual rights a parent may have are properly divested.[3]
 {¶ 7} Decisions concerning child custody matters lie within the sound discretion of the trial court and will not be reversed unless the trial court abused its discretion.[4] An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable or unconscionable.[5] In reviewing this exercise of discretion, appellate courts must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts."[6]
 {¶ 8} R.C. 2151.413 permits an agency that has been granted temporary custody of a child who is not abandoned or orphaned to move for permanent custody. R.C. 2151.414(B) provides that permanent custody may be granted if the court determines that CPSU has proved, by clear and convincing evidence, that any of the factors listed in division (B)(1) apply, and that such action will serve the best interests of the child. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to facts sought to be established.[7]
 {¶ 9} In support of its permanent custody awards, the trial court found, pursuant to R.C. 2151.414(E)(1), that notwithstanding reasonable case planning and diligent efforts by CPSU, the parents continuously and repeatedly failed to substantially remedy the conditions causing the children to be placed outside of the home. The court further concluded, pursuant to R.C. 2151.414(B)(1)(a), that the children could not be placed with either parent within a reasonable amount of time. Upon consideration of the factors enumerated in R.C. 2151.414(D)(1) through (5), and (E)(1) through (16), the court determined that permanent commitment to the state was in the children's best interest.
 {¶ 10} Neither R.C. 2151.414 nor 2151.419 define the terms "reasonable" or "diligent." Courts have found the term "reasonable" to be synonymous with "good faith," as used in former R.C. 2151.414 and other legislation.[8] "[A] good faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or to seek unconscionable advantage."[9] While courts have couched lack of good faith in terms of "dishonest purpose, conscious wrongdoing or * * * ill will in the nature of fraud,"[10] the term "reasonable" necessarily embodies situations where an agency has breached a known duty through passive disregard or neglect.[11] Concomitantly, the term "diligent" has been "characterized [as] steady, earnest, attentive, and energetic application and effort in a pursuit."[12]
Because case plans are tools that child protective service agencies use to facilitate family reunification, the plan and the agency's efforts should account for the respective abilities of the parents and children in pursuing individualized concerns, goals, and steps necessary for reunification.[13] Nevertheless, the issue is not whether there was anything more that CPSU could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of this case.
 {¶ 11} As mentioned previously, the case plan required the Levecks to undergo mental health and substance abuse assessments. In October 2001, William Geiger, a licensed professional counselor, conducted mental health and drug and alcohol evaluations of the Levecks. Geiger recommended that the couple attend additional counseling to address parenting skill and problem solving deficiencies. By December 2001, the Levecks had missed three consecutive counseling appointments and were subsequently discharged for continued absenteeism and lack of commitment. Geiger testified that he had the ability to diagnose and order additional intelligence testing when appropriate, but felt that neither parent displayed any cognitive deficiencies or indicia of borderline intellectual functioning during their sessions. He indicated that the Levecks understood the issues being addressed, but attempted to blame others for their problems and lacked the interest or motivation to complete or apply counseling.
 {¶ 12} Sandy Altman, the current caseworker, indicated that her duties included determining the functioning level of children and parents with whom she was working. Altman testified that she and the previous caseworker had a continuing dialogue with the Levecks, stating that discussions regarding case plan objectives were "fruitful" in the sense that the Levecks provided meaningful input and presented appropriate questions and responses. During a home inspection, Shane Leveck highlighted several areas of the children's case plans and other documents and asked specific questions in relation thereto. When Altman addressed the parties' lack of progress, Chris Leveck stated that she understood what needed to be done and the deadline for completion of the objectives. Altman believed the Levecks' conduct reflected a lack of motivation or devotion, as opposed to any cognitive or learning deficiencies, and saw no need for any further assessment.
 {¶ 13} Rebecca Schumaker, a CPSU parent educator who had worked with the Levecks since November 2001, also testified that, based upon her training and experience with more than two-hundred families, the Levecks were not low-functioning. She noted a contradiction between the Levecks' reading and comprehension abilities and the level of effort they put forth when dealing with their children. Shumaker indicated that problem areas were discussed before and throughout visitations, and the Levecks had no difficulty recalling previously discussed subjects after or during subsequent visitations. She identified several instances of conduct during visitations and home inspections illustrating that the Levecks understood what was required, but simply lacked the devotion or desire to reunite with their children and continued to dedicate their time and money to the pursuit of other hobbies or interests. She stated that the Levecks did not appear to have any retention problems, but would simply digress to behavior requiring less effort.
 {¶ 14} Denise Kring, an intake therapist for Century Health, Inc., conducted another assessment of the Levecks within two weeks of the permanent custody hearings. While Kring determined that therapy was necessary to address parenting skill deficiencies, she found no need for additional psychological or medical testing.
 {¶ 15} The Levecks failed to present any substantive evidence supporting their claims to be learning disabled and do not otherwise challenge the court's determinations. We find no evidence to support the argument that CPSU failed to instruct or assist the Levecks in a manner commensurate with their cognitive abilities. Conversely, we find that the record contains competent, credible evidence to support the entirety of the court's findings, including that CPSU took reasonable steps to ascertain their cognitive abilities and made and diligent efforts toward reunification. Consequently, because the trial court's permanent custody awards are supported by clear and convincing evidence, the Levecks' assignment of error is hereby overruled.
 {¶ 16} Having found no error prejudicial to the appellants herein, in the matters assigned and argued, the judgments of the Hancock County Common Pleas Court, Juvenile Division, are hereby affirmed.
Judgments affirmed.
 BRYANT, P.J., and CUPP, J., concur.
[1] In re Murray (1990), 52 Ohio St.3d 155, 157; Stanley v. Illinois
(1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551,558-559.
[2] In re Murray, 52 Ohio St.3d at 157, citing Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599,606.
[3] In re Palmer (1984), 12 Ohio St.3d 194, 196, certiorari denied105 S.Ct. 918, 469 U.S. 1162, 83 L.Ed.2d 930.
[4] See Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[5] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[6] In re Brodbeck (1994), 97 Ohio App.3d 652, 659, quoting Gerijo,Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226.
[7] State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
[8] See, e.g., Matter of Colter (April 16, 1990), Madison App. No. 9-92-47; In re Cranford (July 24, 1998), Montgomery App. Nos. 17085 and 17105.
[9] In re Weaver (1992), 79 Ohio App.3d 59, 63.
[10] Id. at 64; Matter of Hart (March 9, 1993), Marion App. No. 9-92-47.
[11] See, e.g., In re Fry (Aug. 2, 2002), Marion App. Nos. 9-02-14, 9-02-15, 9-02-16, 2002-Ohio-3935, ¶ 23, 30.
[12] In re House (Feb. 24, 1992), Butler App. Nos. CA91-01-016; CA91-02-022, quoting Webster's Third New International Dictionary (1981) 633.
[13] See In re Sorg (May 28, 2002), Hancock App. No. 5-02-03, 2002-Ohio-2725, ¶ 13-22.