OPINION
{¶ 1} Appellant, Tina Huffman, brings these consolidated appeals from the decision of the Logan County Common Pleas Court, Juvenile Division, terminating appellant's parental rights as to her five minor children. On appeal, appellant asserts that the determination of the trial court was not in the best interest of the children.
 {¶ 2} The facts and procedural history pertinent to the issue raised on appeal are as follows. The appellant is the biological mother of Angela Lattimer (Case No. 8-02-34), Jennifer Lattimer (Case No. 8-02-37), Christopher Huffman (Case No. 8-02-35), Ashley Huffman (8-02-36), and Danielle Huffman (8-02-41). Rory Scott Lattimer is the biological father of the two oldest children, Angela and Jennifer. Roger Huffman is the biological father of the three youngest children, Christopher, Ashley, and Danielle. The trial court granted the motion of appellee, Logan County Children's Services Board ("LCCSB"), for placement of Angela and Jennifer in a planned permanent living arrangement, and also granted permanent custody of Christopher, Ashley and Danielle to the LCCSB.
 {¶ 3} This case was originated on July 28, 2001 when law enforcement officials removed four of appellant's children from appellant's home and turned over custody of the children to the LCCSB. Complaints were filed regarding all five children on July 31, 2001, and a shelter care hearing was had on the same day. The court found probable cause for the removal and continued temporary custody of the children with the LCCSB in foster care.[1] Among the issues prompting the removal of the children from the home were inadequate housing, filthy living conditions, poor school attendance, frequent domestic violence, and excessive use of alcohol by both parents.
 {¶ 4} A hearing was held on September 9, 2001, in which the children were adjudicated to be "dependent," and a dispositional hearing was held on October 25, 2001, during which in camera interviews were conducted with each of the five children. Thereafter, the court ordered that temporary custody of the children would remain with the LCCSB. The court also established a schedule to allow for parental visitation and developed a case plan to assist the parents with three major issues in their lives: alcohol dependence, domestic violence, and the ability to provide adequate housing and care for their children.
 {¶ 5} Appellant and her husband, Roger Huffman, made initial progress in meeting the objectives of the case plan, and the court expanded visitation to include every-other-weekend overnight visitation. However, several weeks later, in response to complaints of domestic violence and alcohol abuse by the parents, the LCCSB filed an "emergency case plan change" and the court ordered weekend visitations to cease.
 {¶ 6} On May 6, 2002, the court held another dispositional hearing where the court again determined that custody of the children should remain with the LCCSB with placements in foster care and supervised visitations with their parents. Thereafter, on June 6, 2002, the LCCSB filed a motion for permanent custody of the Huffman children, and a motion for planned permanent living arrangements for Angela and Jennifer Lattimer. The permanent custody hearing was held on August 28, 29 and 30, 2002, after which the court granted the LCCSB's motion for permanent custody of the Huffman Children and granted planned permanent living arrangements for Angela and Jennifer.
 {¶ 7} Appellant appeals to this court setting forth one assignment of error.
 ASSIGNMENT OF ERROR NO. I The courts [sic] ruling is not in the best interest of the Huffmanchildren.
 {¶ 8} Initially, we note that appellant has not set forth any assignment of error or argument concerning the planned permanent living arrangements ordered for Angela and Jennifer. Therefore, with no error alleged, the orders of the trial court in regards to Angela and Jennifer Lattimer are affirmed without further discussion.[2] We will address appellant's assignment of error in regards to the remaining children.
 {¶ 9} Appellant asserts that the trial court erred in finding that it was in the best interest of the children to award permanent custody of Ashley, Danielle and Christopher Huffman to the LCCSB.
 {¶ 10} A parent's right to raise his or her child is an "essential" and "basic civil right."[3] Parents have a "fundamental liberty interest" in the care, custody, and management of their children.[4] The rights and interests of a natural parent are not, however, absolute: where a court finds that permanent custody is appropriate under circumstances of a particular case and all due process safeguards have been followed, whatever residual rights a parent may have are properly divested.[5]
 {¶ 11} In order to determine whether to permanently divest parents of their custody rights a trial court must apply a two-prong test. R.C.2151.414(B)(1) provides that a court must: (1) determine whether one of the factors in R.C. 2151.414(B)(1)(a) through (d) applies; and (2) must determine by clear and convincing evidence whether such action will serve the best interests of the child.
 {¶ 12} In the present case, the first prong of the test has been satisfied[6] and is not the basis of appellant's assignment of error. Rather, the appellant challenges whether the trial court's decision serves the best interest of the children. Accordingly, this case turns on whether granting permanent custody of the children to the LCCSB was in the best interest of the children.
 {¶ 13} R.C. 2151.414(D)(1) through (5) sets forth the relevant factors a court must consider in determining the best interests of the child. These factors include, but are not limited to, the following:
(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
(4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 14} Based upon our review of the record, it is clear that the trial court did consider these factors and made findings with respect to many of them. For example, the trial court made the following findings: Christopher's and Ashley's behavior and grades both dramatically improved while in the care of foster parents as compared to when appellant had custody;[7] appellant was granted visitation but failed to visit the children on numerous occasions;[8] based upon the report the Guardian Ad Litem, the wishes of the children support the granting of the motion for permanent custody;[9] the children have been in the care of the LCCSB since July 28, 2001;[10] the LCCSB cannot make plans for permanency, including adoption, without first receiving a grant for permanent custody;[11] the children had suffered from lack of dental care, but had significant dental work over the past year while in foster care;[12] appellant failed to meet the goals of her case plan due to continued alcohol abuse and occurrences of domestic violence;[13] and appellant had twice failed to complete therapy for alcohol dependency.[14]
 {¶ 15} Appellant, at no point, challenges or attempts to refute the findings of the trial court, but merely argues that the "wishes" of her children are ultimately determinative of the best interest of the children. Appellant refers to the portions of the in camera interviews where the children state that they miss their parents, and wish they could go home to them. During other portions of the in camera interviews, however, the children acknowledge the appellant's alcohol abuse and the frequent occurrences of domestic violence which would result therefrom. They also stated that they like living with their foster parents.
 {¶ 16} It is natural and expected that the Huffman children would miss and want to reunite with their parents. But this alone cannot be the sole basis on which to determine the best interest of the children. The trial court judge did consider the wishes of the children, however, the other factors present in this case clearly support the trial court's decision. We find the trial court's determination that it is in the best interest of the children to grant permanent custody to the LCCSB to be supported by the evidence.
 {¶ 17} Accordingly, appellant's assignment of error is overruled and the decision concerning the custody of Christopher, Ashley, and Danielle is affirmed.
Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
BRYANT, P.J., and WALTERS, J. concur.
[1] The order pertained to all of the children except Jennifer Latimer who had already been temporarily placed out of the home by the court.
[2] We further note that Roger Huffman originally filed an appeal concerning the permanent custody of Danielle, Ashley, and Christopher Huffman, but later withdrew said appeal.
[3] In re Murray (1990), 52 Ohio St.3d 155, 157; Stanley v. Illinois
(1972), 405 U.S. 645, 651.
[4] Id., (1990), 52 Ohio St.3d 155, 157, citing, Santosky v. Kramer
(1982), 455 U.S. 745, 753.
[5] In re Palmer (1984), 12 Ohio St.3d 194, 196, certiorari denied.
[6] The trial court need only find one of the factors in R.C.2151.414(B)(1) to be applicable. The relevant factors in this case are found in R.C. 2151.414(B)(1)(a) and (d), i.e., the children have continuously been in the custody of the LCCSB for a period greater than 12 months, and due to appellant's failure to meet the goals of the case plan and continued problems with alcohol, the trial court also found that that the children could not be placed in the parent's care within a reasonable amount of time.
[7] R.C. 2151.414(D)(1). In fact the appellant had been previously found guilty of Educational Neglect for not sending her children to school.
[8] R.C. 2151.414(D)(1).
[9] R.C. 2151.414(D)(2).
[10] R.C. 2151.414(D)(3).
[11] R.C. 2151.414(D)(4).
[12] R.C. 2151.414(D)(1), 2151.414(D)(5) and 2151.414(E)(8).
[13] R.C. 2151.414(D)(5) and 2151.414(E)(9).
[14] R.C. 2151.414(D)(1), 2151.414(D)(5) and 2151.414(E)(9).