DECISION AND JUDGMENT ENTRY
{¶ 1} Caroline Prusia and Gregory Prusia both appeal from a decision of the Lucas County Court of Common Pleas, Domestic Relations Division. Because we conclude that it was improper to calculate child support under the shared parenting guidelines when a shared parenting plan was not approved, we affirm in part, reverse in part, and remand to the trial court.
 Facts {¶ 2} Caroline and Gregory Prusia were married June 26, 1993 and had one son born on August 29, 1998. The couple filed for divorce, which was granted on May 6, 2002. At trial, the parties had disputed whether Gregory had violent tendencies or whether Caroline was a hypochondriac over their child's health. They also disputed charges concerning a canceled credit card. Through the aid of the guardian ad litem, the parties agreed to care for their minor son an equal amount of time. Legal custody was awarded to Gregory as the residential parent, however. Although no one characterized this arrangement as shared parenting, the trial court calculated child support under a shared parenting plan. Both parties appealed aspects of the May 6, 2002 judgment entry. The mother's five assignments of error are set forth with the father's sole assignment following.
 Appellant's Assignments of Error {¶ 3} 1. "The trial court erred and abused its discretion in designating defendant as the residential parent and legal custodian of the minor child."
 {¶ 4} 2. "The trial court erred and abused its discretion in designating defendant the residential and legal custodian of the minor child where it failed to conduct the requisite analysis under O.R.C.3109.04(C) where defendant plead guilty to an offense against a person who at the time of the offense was a family or household member."
 {¶ 5} 3. "The trial court erred and abused its discretion when it failed to consider as a relevant factor in designating residential and legal custody that plaintiff had been the minor child's primary caregiver from birth."
 {¶ 6} 4. "The trial court's finding that plaintiff was willfull [sic] and vindictive in her actions and decision-making was not supported by credible evidence."
 {¶ 7} 5. "The trial court erred and abused its discretion in its determination of the allocations of marital funds."
 Cross-Appellant's Cross-Assignment of Error {¶ 8} "The trial court abused its discretion when it ordered the appellee to pay child support to the appellant."
 Standard of Review {¶ 9} As in many cases, the standard of review in this domestic relations matter is whether the trial court abused its discretion. Boothv. Booth (1989), 44 Ohio St.3d 142, 144; Trickey v. Trickey (1952),158 Ohio St. 9, 14 and ¶ 2 of syllabus. The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is "unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; See also, State v.Adams (1980), 62 Ohio St.2d 151, 157; Nakoff v. Fairview GeneralHospital (1996), 75 Ohio St.3d 254, 256. Following this standard, an appellate court has limited review. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of the trial court. See Pons v. Ohio State MedicalBoard. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750-751.
 Appellant's First and Second Assignments of Error {¶ 10} The gist of Caroline's first and second assignments of error is that the trial court should not have made the child's father his legal custodian and residential parent[1] because
 {¶ 11} he was charged with domestic violence against her. After reviewing the record, we conclude that the trial court did not abuse its discretion by naming the father residential parent and legal custodian.
 {¶ 12} The trial court under R.C. 3109.04(B)(1),[2] the statute dealing with allocation of parental rights and responsibilities, must determine what is in the best interests of the child. The two statutes cited by Caroline, R.C. 3109.04(C)[3] and R.C. 3109.04(F)(1)(h)do[4]
not bar Gregory's designation as residential parent and legal custodian. Gregory did
 {¶ 13} not plead guilty to an offense of violence involving a household member. He pled guilty to R.C. 2917.11 — Disorderly Conduct. Whether a minor misdemeanor or a misdemeanor of the fourth degree, disorderly conduct is not a specifically defined "offense of violence" under R.C. 2901.01(A)(9);[5] rather, it is a crime against the public peace.
 {¶ 14} Although Caroline argues that Gregory was guilty of domestic violence, he was not convicted of anything other than disorderly conduct. Since the trial court was not required to consider R.C. 3109.04(C) or R.C. 3109.04(F)(1)(h), it did not abuse its discretion in choosing to overlook the misdemeanor. The judgment entry is detailed, explaining how the court viewed the best interests of the child and why it selected the father as the residential parent and legal custodian. Without contrary evidence, we will presume that the trial court considered all the relevant factors. Evan v. Evans (1995), 106 Ohio App.3d 673, 677. Caroline's first and second assignments of error are found not well-taken.
Appellant's Third Assignment of Error
 {¶ 15} The third assignment of error claims the trial court ignored evidence that Caroline was the primary caregiver for her child. Status as primary caregiver is simply one factor for a judge to consider when designating parental rights. Saltzman v. Saltzman, 3d Dist. No. 16-02-10, 2002-Ohio-6490, at ¶ 8. The assertion that one parent is the primary caretaker is not the sole determining factor in who is awarded custody. Here, testimony differed on the identity of the child's principal caregiver. Gregory's sister-in-law, Page Prusia, testified that based on her experience with the couple, that her brother-in-law seemed to be; Caroline and her parents stated that she was. The trial court's judgment entry does not specify which parent was the boy's primary caregiver, but was not required to do so. Although it has no such declaration, the entry shows the trial judge reviewed the evidence appropriately and made a decision in the best interest of the child. The trial court cannot be said to have abused its discretion on this point. Appellant's third assignment of error is found not well-taken.
Appellant's Fourth Assignment of Error
 {¶ 16} The fourth assignment of error claims that the trial court had insufficient evidence to find that Caroline's actions were willful and vindictive by keeping Gregory from visiting with his son when he was previously scheduled to do so. The trial court's entry states:
 {¶ 17} "The Court specifically finds that the father is the better decision maker of the two parents and is more likely of the two parents to foster visitation and contact for Ryan with the other parent and extended family. The Court further finds that the mother has been vindictive toward the father and has withheld Ryan from him as a means of punishing the father. The mother has lacked insight into the problems she is causing for Ryan in her efforts to harm the father."
 {¶ 18} Caroline asserts that the trial court's finding of her willfulness and vindictiveness toward Gregory was not supported by credible evidence. The Supreme Court of Ohio, in Bechtol v. Bechtol, cites to the Trickey rule when the appellant makes a "credible evidence" claim:
 {¶ 19} "Our review of the record reveals that evidence was presented on almost every factor found in R.C. 3109.04(C) for consideration by the trial court. Some of the factors were not disputed, but it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. See Pasqualone v. Pasqualone (1980), 63 Ohio St.2d 96, 17 O.O.3d 58, 406 N.E.2d 1121." Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23.
 {¶ 20} Caroline is not claiming the custody determination is unsupported by credible evidence; she is complaining that the record does not show that she was willful and vindictive. This is irrelevant to the court's determination on the best interests of the child. The trial court stated as much in its judgment entry: "The Court has fully considered the evidence, the best interests of the parties' minor child, the stipulations of the parties and all the matters set forth in O.R.C. Sections 3109.03 through 3109.051." Nevertheless, even if we needed to find that Caroline's actions were willful and vindictive by credible evidence, we could. The record shows the guardian ad litem and the psychologist recounted a number of times where Caroline interpreted doctor's letters to invent reasons why Gregory could not have companionship with his child. As a particularly egregious example, Caroline prevented the boy from seeing his father on Christmas. Therefore, the trial court did not abuse its discretion when it stated that Caroline was vindictive in keeping Gregory from seeing his son. Appellant's fourth assignment of error is found not well-taken.
Appellant's Fifth Assignment of Error
 {¶ 21} On the fifth assignment of error regarding marital distribution, Caroline maintains she is forced to overpay her ex-husband because the amount of money she owed was miscalculated. The general rule is that the marital estate should be divided equally. R.C. 3105.171(C)(1). This equal division is modifiable when one of the spouses acts in an improper manner and misuses marital funds. That is exactly the case here. The court found that Caroline misused a portion of the marital funds. She reactivated a Discovery Card her former spouse had canceled and charged a large sum to his former account. In such a situation, R.C.3105.171(E)(3) applies:
 {¶ 22} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The trial court views the witnesses and observes their demeanor, gestures, and voice inflections and is charged with assessing in credibility and weighing the testimony. Stateex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41, 45-46, 560 N.E.2d 765, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77; Bass v.Bass, 6th Dist. No. L-01-1457, 2002-Ohio-6239, at ¶¶ 74-76.
 {¶ 23} We must defer to the trial court in its determination of the allocation of funds. The trial court divided the funds in the May 6, 2002 judgment entry:
 {¶ 24} "Now, therefore, the Court orders that the wife shall pay for and hold the husband harmless on the Discover Card bill. Further, the wife shall pay the husband from her one-half net share of the sale proceeds of the house the sum of $5,150. Said sum is the balance of the husband's one-half share of the funds withdrawn by the parties as aforesaid. ($11,300(W) + $2,300(W) + $3, 300(H) = $16,900 divided by 2 = $8,450 — $3,300(H) = $5,150.)" Caroline states she owes only $1,747.32. Gregory states that if Caroline's testimony is to be believed, she owes $4,856.63, $293.37 less than the trial court's award. To bolster their arguments on appeal, both parties refer to the hearing transcript from April 8, 2002, which is not included in the record on appeal. When faced with an inadequate or incomplete record, we must presume the regularity of the trial court's actions and accept its judgment. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409; Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. The calculations are set forth in the judgment entry. Therefore, Caroline's fifth assignment is found not well-taken.
Cross-Appellant's Cross-Assignment of Error
 {¶ 25} Gregory attacks his obligation to pay child support as residential parent and legal guardian since there was no shared parenting arrangement. He argues a residential parent and legal custodian should never have to pay child support. Because we agree that the trial court erred by calculating support under a shared parenting plan, we reverse on this ground. We do not accept the premise that a residential parent may never be ordered to pay child support to a non-residential parent, however.
 {¶ 26} This assignment of error arises out of the May 6, 2002 judgment entry. During the pendency of this case, the trial court was able to discern an important factor bearing upon the child's best interests. Although the boy's time with his parents would be split equally between his mother and father, his parents were not equal in income. Gregory has an annual income of $102,192. Caroline has an imputed minimum wage income of $10,920. To address this disparity, the court treated the parties' equal time with their child as a shared parenting arrangement. It used the shared parenting form to calculate the father's child support obligation, even though the court knew that Gregory was named legal custodian and residential parent. This was an abuse of discretion. It was not proper to calculate child support in this case using the shared parenting form. This case does not concern shared parenting,[6] and the court cannot declare it as such on its own.[7]
 {¶ 27} More fundamentally, we must consider whether child support may be ordered against the residential parent and legal custodian. Faced with a similar issue, the Eighth District Court of Appeals, in Kanel v.Kanel (Oct. 19, 1989), Cuyahoga App. No. 56013, affirmed the award of $75 per week child support to a nonresidential parent, obligating the custodial parent. The court ruled in this manner because the parties had agreed to this amount, and child support to the non-residential parent was in the best interests of the child.
 {¶ 28} Here, Gregory has a well paying job, and Caroline is a student with alimony and child support income. Their time to be spent with their son is to be equal. It is in the best interest of the child to make sure that both parents have ability to care for him while he is in their respective care. Allowing Gregory to cut off the flow of money to Caroline when she has charge of their son is not in the child's best interest.
 {¶ 29} This issue has arisen elsewhere. In some states, appellate courts have ruled that "common sense dictates that, once legal and physical custody is placed in one parent, that custodial parent has no obligation to pay child support to the noncustodial parent." Shoff v.Shoff (1989), 179 Ill. App.3d 178, 186. Other appellate courts have stated that the custodial parent need not pay child support to the noncustodial parent during periods of extended visitation. Bondi v.Bondi (1998), 255 Neb. 319, 321-323; Wehrum v. Wehrum (Fla.App. 1999),745 So.2d 465; Masino v. Masino (Miss. 2002), 829 So.2d 1267, 1273.
 {¶ 30} Courts have been reluctant to set a blanket rule that states a custodial parent may never be ordered to pay child support to a noncustodial parent; rather, they prefer to examine the particular circumstances of each case to see what is in the best interest of the child. Gray v. Gray (Tenn.Ct.App. Mar. 7, 2001), Middle Section, at Nashville No. M2000-0620-COA-R3-CV; Caldwell v. Caldwell (Tenn.Ct.App. Aug. 26, 1996), Eastern Section No. 03A01-9404-CV-00151. A case quite similar to this case was decided by a Pennsylvania appellate court:
 {¶ 31} "[W]here parents of minor children share custody to the extent that the non-custodial parent has the children for nearly fifty (50%) percent of the hours of each month and has, in addition, the entire responsibility for transporting the children to and from her home, their father's home, their schools and other activities; and where the `primary' custodial parent's earnings or earning potential varies significantly from the other parent, child support may be ordered to be paid to the `non-custodial' parent. We would anticipate that such shared child support would be limited to cases such as this where the `visitation' amounts to de facto shared custody and where the non-primary custodial parent is able to demonstrate regular, necessary and reasonable expenses incurred attendant to the visitation/custody." Little v. Little
(1995), 441 Pa. Super. 185, 193-194.
 {¶ 32} In this case, the trial court mandated that the child be in the custody of each parent for an equal amount of time. The relative imbalance in income between the parents is obvious, yet each will have financial responsibility while caring for him an equal amount of time. We rule that it is proper for a trial court to order a custodial parent to pay child support to the noncustodial parent where the parents have equal time with the child. Also, we will not substitute our judgment for that of the trial court and say it abused its discretion when it reached a result that was in the best interest of the child. Gregory's cross-assignment of error is found not well-taken in that respect.
 {¶ 33} The trial court, however, did err when it used the shared parenting form to determine child support. We remand this case to the trial court to remedy that defect. "The trial court may not sua sponte
create a shared parenting plan. Wangugi v. Wangugi, 1996 Ohio App. LEXIS 3871 (Sept. 4, 1996), Ross App. No. 95 CA 2160, unreported; See, also,McClain v. McClain (1993), 87 Ohio App.3d 856, 623 N.E.2d 242." Piwinskiv. Piwinski (Mar. 18, 1999), Cuyahoga App. No. 73956. This case must be reversed and remanded solely to allow the trial court to calculate child support on the proper form with Ryan's father designated as the residential parent and legal custodian. Gregory's cross-assignment of error is found well-taken on this narrow ground.
 {¶ 34} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is affirmed in part, reversed in part, and remanded to allow the court to compute child support with the father listed as the residential parent and legal custodian to cite specifically to R.C. 3119.22 and R.C. 3119.23, if it chooses to deviate from the schedule and worksheet. Appellant/cross-appellee is assessed the court costs of this appeal.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., Arlene Singer, J., CONCUR.
[1] R.C. 3109.04(K)(2) provides,
"A parent who primarily is allocated the parental rights and responsibilities for the care of a child and who is designated as the residential parent and legal custodian of the child under an order that is issued pursuant to this section on or after April 11, 1991, and that does not provide for shared parenting has `custody of the child' and `care, custody, and control of the child' under the order, and is the `residential parent,' the `residential parent and legal custodian,' or the `custodial parent' of the child under the order."
[2] R.C. 3109.04(B)(1) provides,
"(B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."
[3] R.C. 3109.04(C) provides in pertinent part,
"* * *
"If the court determines that either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being a neglected child, that either parent previously has been determined to be the perpetrator of the neglectful act that is the basis of an adjudication that a child is a neglected child, or that there is reason to believe that either parent has acted in a manner resulting in a child being a neglected child, the court shall consider that fact against naming that parent the residential parent and against granting a shared parenting decree. When the court allocates parental rights and responsibilities for the care of children or determines whether to grant shared parenting in any proceeding, it shall consider whether either parent has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding, has been convicted of or pleaded guilty to any other offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding and caused physical harm to the victim in the commission of the offense, or has been determined to be the perpetrator of the abusive act that is the basis of an adjudication that a child is an abused child. If the court determines that either parent has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding, has been convicted of or pleaded guilty to any other offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the proceeding and caused physical harm to the victim in the commission of the offense, or has been determined to be the perpetrator of the abusive act that is the basis of an adjudication that a child is an abused child, it may designate that parent as the residential parent and may issue a shared parenting decree or order only if it determines that it is in the best interest of the child to name that parent the residential parent or to issue a shared parenting decree or order and it makes specific written findings of fact to support its determination."
[4] R.C. 3109.04(F)(1)(h) provides,
"(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
"* * *
"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;"
[5] R.C. 2901.01(A)(9) provides,
"(A) As used in the Revised Code:
"* * *
"(9) `Offense of violence' means any of the following:
"(a) A violation of section 2903.01, 2903.02, 2903.03, 2903.04, 2903.11,2903.12, 2903.13, 2903.15, 2903.21, 2903.211 [2903.21.1], 2903.22, 2905.01,2905.02, 2905.11, 2907.02, 2907.03, 2907.05, 2909.02, 2909.03, 2909.24,2911.01, 2911.02, 2911.11, 2917.01, 2917.02, 2917.03, 2917.31, 2919.25,2921.03, 2921.04, 2921.34, or 2923.161 [2923.16.1], of division (A)(1), (2), or (3) of section 2911.12, or of division (B)(1), (2), (3), or (4) of section 2919.22 of the Revised Code or felonious sexual penetration in violation of former section 2907.12 of the Revised Code;
"(b) A violation of an existing or former municipal ordinance or law of this or any other state or the United States, substantially equivalent to any section, division, or offense listed in division (A)(9)(a) of this section;
"(c) An offense, other than a traffic offense, under an existing or former municipal ordinance or law of this or any other state or the United States, committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons;
"(d) A conspiracy or attempt to commit, or complicity in committing, any offense under division (A)(9)(a), (b), or (c) of this section."
[6] R.C. 3109.04(J) provides,
"As used in the Revised Code, `shared parenting' means that the parents share, in the manner set forth in the plan for shared parenting that is approved by the court under division (D)(1) and described in division (K)(6) of this section, all or some of the aspects of physical and legal care for their children."
[7] Emmert v. Aronson (Mar. 5, 1997), Summit App. No. 17878; Helms v.Helms (Sep. 10 1997), Summit App. No. 18142; Docie v. Burt (Mar. 24, 1998), Athens App. No. 97CA19; Davis v. Davis (Sep. 5, 2000), Pike App. No. 99CA630; Swope v. Cooper (Nov. 7, 2000), Franklin App. No. 00AP-154;Corradi v. Corradi, 7th Dist. No. 01-C.A.-22, 2002-Ohio-3011, at ¶ 35; Lassiter v. Lassiter, 1st Dist. No. C-010309, 2002-Ohio-3136, at ¶ 4.